In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4239

Ralph M. Cox, on behalf of himself
and others similarly situated,

Plaintiff-Appellant,

v.

Zale Delaware, Inc.,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1670--Elaine E. Bucklo, Judge.


Argued September 12, 2000--Decided February 8, 2001


 Before Posner, Coffey, and Manion, Circuit Judges.

 Posner, Circuit Judge.  A large class-action suit has grown out of a tiny acorn of a dispute. In 1993 Ralph Cox filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. In the list of debts that he submitted to the bankruptcy court he listed a debt to Zale, from which he had bought (on credit) a ring in which Zale retained a security interest. About a month after the submission of the list of debts he signed an agreement with Zale reaffirming the debt and agreeing to pay the unpaid balance of $218.93 at the rate of $15 a month. The next month the bankruptcy proceeding wound up with an order discharging Cox from all his listed debts-- including the debt to Zale, because the reaffirmation agreement had not been filed with the bankruptcy court.

 The failure to file had an additional significance besides preventing the court from learning of the agreement and so deleting the debt to Zale from the list of discharged debts. Section 524(c) of the Bankruptcy Code provides that an agreement reaffirming a dischargeable debt "is enforceable only if . . . such agreement has been filed with the court." 11 U.S.C. sec. 524(c)(3). The purpose is to help assure that the agreement is voluntary on the debtor's part rather than coerced and does not put such a

crushing weight on his shoulders that it prevents him from making the "fresh start" that is one of the goals of bankruptcy law. In re Turner, 156 F.3d 713, 718 (7th Cir. 1998); In re Duke, 79 F.3d 43 (7th Cir. 1996); see generally Grogan v. Garner, 498 U.S. 279, 286 (1991); In re Renshaw, 222 F.3d 82, 86 (2d Cir. 2000). Provided there is no coercion or harassment of the debtor, the creditor's offer of reaffirmation is not deemed an attempt to collect the debt and therefore does not violate the automatic stay, the statutory injunction against creditors' seeking to collect their debts from a debtor after he's entered bankruptcy. In re Duke, supra; Pertuso v. Ford Motor Credit Corp., 233 F.3d 417, 423 (6th Cir. 2000); In re Brown, 851 F.2d 81, 84 (3d Cir. 1988). Cox's argument that Zale's offer violated the automatic stay is therefore frivolous.

But the reaffirmation agreement was never filed, and was therefore invalid even though the offer itself had not been improper. Bessette v. Avco Financial Services, 230 F.3d 439, 444 (1st Cir. 2000); In re Turner, supra, 156 F.3d at 718. Section 524(c) is explicit that such an agreement is enforceable only if all the statutory conditions, including filing, are satisfied. The record is silent on why the agreement was not filed. Cox argues that Zale has a practice of not filing such agreements because it fears that bankruptcy judges will disallow them, though the judge cannot do that if the debtor is represented by counsel, as Cox was. 11 U.S.C. sec. 524(c)(6)(A); In re Grinnell, 170 B.R. 495 (Bankr. D.R.I. 1994); In re Dabbs, 128 B.R. 307, 309 (Bankr. D. Fla. 1991). The argument, though implausible in a case such as this in which the debtor was represented by counsel in his bankruptcy proceeding, cannot be evaluated on the present record.

The reader may be wondering why a debtor would ever agree to pay a dischargeable debt, and why a secured creditor would care about securing an agreement that the debtor pay, since a discharge in bankruptcy does not extinguish a secured creditor's right to enforce his security interest. Dewsnup v. Timm, 502 U.S. 410 (1992); In re Penrod, 50 F.3d 459, 461 (7th Cir. 1995); In re Be-Mac Transport Co., 83 F.3d 1020, 1025 (8th Cir. 1996). The answer to the second question, as explained in our Penrod opinion, 50 F.3d at 461-62, is that secured creditors are frequently undersecured, especially when the cost of foreclosing on a security interest is factored in, and so they would like to collect the debt directly from the debtor rather than liquidate their security interest. The answer to the first question is that the debtor may prefer to retain the property in which his creditor holds a

secured interest, rather than avoid paying the creditor but lose the property to repossession or foreclosure. An understanding of the incentives of the parties to debt-reaffirmation agreements will turn out to be important to deciding on the proper remedy for violation of the statutory requirement that such agreements be filed with the bankruptcy court.

Back to our case. Years passed and the bankruptcy proceeding was long over with and Cox had paid off the reaffirmed debt in full when he brought this suit on behalf of himself and all others similarly situated--meaning all other customers of Zale who had signed debt-reaffirmation agreements that Zale had not filed with the bankruptcy court. The suit sought to rescind the agreement and recover the amounts that Cox (and the other members of the class in similar situations) had paid Zale after the bankruptcy court had entered its order discharging his listed debts. Cox based federal jurisdiction on 28 U.S.C. sec. 1334(a), which gives the federal district courts exclusive jurisdiction over suits arising under the Bankruptcy Code. The district court referred the suit to the bankruptcy court (which technically is a division of the district court) pursuant to 28 U.S.C. sec. 157(a) (see also 28 U.S.C. sec. 1334(b)), which authorizes such references. That court permitted Cox to reopen his bankruptcy case in order to present his claim for rescission. Why the old case should have been reopened rather than a new one filed is a mystery that the parties have not explored; but it has no practical importance beyond the question whether a filing fee had to be paid, Central Laborers' Pension, Welfare & Annuity Funds v. Griffee, 198 F.3d 642, 644 (7th Cir. 1999), so we ignore it.

But the court then dismissed the reopened case on the ground that section 524(c) does not create a private right of action for violation of its requirement that a debt-reaffirmation agreement, to be enforceable, be filed with the bankruptcy court. Cox's exclusive remedy, the judge ruled, was a motion in the reopened bankruptcy proceeding that Zale be adjudged in contempt of court for violating the order of discharge by trying to collect a discharged debt, and be suitably sanctioned. To similar effect, see Bessette v. Avco Financial Services, supra, 230 F.3d at 444-45. A still more recent decision, Pertuso v. Ford Motor Credit Corp., supra, 233 F.3d at 421-23, agrees with Bessette that section 524(c) creates no private right of action, but disagrees that the contempt power can be used to punish violations of the filing requirement, id. at 423 n. 1, though its disagreement may have been shaped by the facts of the case, as we'll

see. Both cases hold, correctly in our view, that remedies against debt-affirmation agreements contended to violate the Bankruptcy Code are a matter exclusively of federal bankruptcy law. Id. at 426; Bessette v. Avco Financial Services, supra, 230 F.3d at 447-48; see also MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 913-14 (9th Cir. 1996). That extinguishes the plaintiff's claim for unjust enrichment, which is based on state law.

In holding that section 524(c) does not create a private right of action, the Sixth Circuit in Pertuso and the district court and bankruptcy court in the present case emphasized that Congress explicitly created a private right of action for violation of 11 U.S.C. sec. 362, the provision that creates the automatic stay to which we referred earlier, yet did not do so in section 524(c), and that the Supreme Court is reluctant to imply private rights of action in federal statutes. E.g., Suter v. Artist M., 503 U.S. 347, 363-64 (1992); Thompson v. Thompson, 484 U.S. 174, 187 (1988); California v. Sierra Club, 451 U.S. 287, 297-98 (1981); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 24 (1979); Touche Ross & Co. v. Redington, 442 U.S. 560, 576 (1979). With all due respect, we think those emphases misplaced. The private rights of action that the Court is reluctant to read into federal statutes are rights to obtain damages for statutory violations remediable by public agencies. Cox is not seeking damages, and section 524(c) is enforceable only by private parties. A statute regulating purely private rights that makes a contract void makes the contract rescindable by a party to it, especially when the other party to the contract is trying to enforce it, so that the contract's illegality is interposed by way of defense, rather than as the basis for an independent suit. E.g., Transamerica Mortgage Advisors, Inc. v. Lewis, supra, 444 U.S. at 18. If a statute declaring a type of contract unenforceable does anything, it creates a defense to a suit to enforce such a contract.

It is thus a non sequitur for Zale to argue that because section 524(c) does not create a right to seek damages for violation of the requirement that a debt-reaffirmation agreement be filed with the bankruptcy court, Cox would have had no defense to a suit by Zale to enforce the agreement. Suppose Cox had realized the agreement was unenforceable before he had completed paying off the debt and so had refused to complete payment. Had Zale sued him for breach of contract, he could have successfully interposed the defense that the contract was unenforceable. (Otherwise an unenforceable contract would be enforced!) In other words, he could have sought

rescission in that suit. It is true that to obtain rescission and thus get his $219 back, he would have to revest Zale with its security interest in the ring and perhaps compensate Zale for the rental value of the ring during the period since he signed the debt-reaffirmation agreement, on the theory that had it not been for that agreement Zale would have repossessed (or at least would have had the right to repossess) the ring. When a contract is rescinded, the parties have to be put back to where they were before the contract was made, more precisely to where they would have been had they not made the contract in the first place. Fleming v. United States Postal Service, 27 F.3d 259, 262 (7th Cir. 1994); Resolution Trust Corp. v. FSLIC, 25 F.3d 1493, 1504 (10th Cir. 1994). Hence the relevance of the rental value of the ring.

It makes no difference, however, whether the contract is rescinded in a suit for rescission or by the successful interposition of a defense to a suit to enforce the contract. Hogue v. Pellerin Laundry Machinery Sales Co., 353 F.2d 772, 774 (8th Cir. 1965); Rosewood Corp. v. Fisher, 263 N.E.2d 833, 838 (Ill. 1970); Amato v. Edmonds, 408 N.E.2d 1172, 1175 (Ill. App. 1980). The effect of rescinding a debt-reaffirmation agreement is the same in either case: the debt is discharged in bankruptcy but the creditor is revested with his security interest. That does not make the debtor's victory Pyrrhic (if we disregard the minuteness of the stakes in relation to the expense of litigation), because often the value of the security interest is too slight to incite the creditor actually to enforce it.

If we are right so far, it can make no difference, at least as regards drawing any inference from the right conferred by section 362(h) to seek damages for violation of the automatic stay, that Cox sought rescission after rather than before completing payment under the reaffirmation agreement. A contract may be rescinded after full performance on both sides, see, e.g., Finke v. Woodard, 462 N.E.2d 13, 18 (Ill. App. 1984); Seneca Wire & Mfg. Co. v. A.B. Leach & Co., 159 N.E. 700, 702 (N.Y. 1928); E. Allan Farnsworth, Contracts, sec. 4.4, p. 228 and n. 2; sec. 4.15, p. 261 (3d ed. 1999), provided that it is possible to put the parties back in the position they would have occupied had they not made the contract in the first place, and that was possible here, as we have just seen. The debtor cannot wait forever to rescind an invalid debt-reaffirmation agreement, or he'll be met with a defense of statute of limitations or of laches, but neither is pleaded here. We add that suits under the Bankruptcy Code, presumably

including suits for rescission, can proceed as class actions in appropriate circumstances. Fed. R. Bankr. Pro. 7023; In re American Reserve Corp., 840 F.2d 487 (7th Cir. 1988); Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 973, 975 (5th Cir. 2000); Bessette v. Avco Financial Services, Inc., supra, 230 F.3d at 446.

But--and it is a big "but"--we have yet to consider the remedial scheme of section 524 itself, a matter potentially of great relevance to the question whether a suit for rescission of a debt-affirmation agreement invalidated by that section is proper. Section 524(a)(2) provides that an order discharging the debtor from his debts "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Until the addition of section 14(f) to the Bankruptcy Act in 1970 (the section that is now section 524(a)(2) of the Bankruptcy Code), a discharge was merely an affirmative defense that the debtor could plead if later sued by the holder of one of the discharged debts. 4 Collier on Bankruptcy para. 524.LH.[1] (15th rev. ed., Lawrence P. King ed. 2000). Section 524(a)(2) not only prohibits but also enjoins such suits, as well as other collection actions, and so the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge. Pertuso v. Ford Motor Credit Corp., supra, 233 F.3d at 421; In re National Gypsum Co., 118 F.3d 1056, 1063 (5th Cir. 1997); 4 Collier on Bankruptcy, supra, para. 524.02[2][c]. The question we have to decide is whether that remedy is exclusive, or whether, as Cox has done, a debtor can sue to rescind a contract by which a creditor attempted to collect a debt that had been discharged.

If the debt-reaffirmation agreement was ineffective to take Cox's debt to Zale off the list of debts that were discharged in the bankruptcy proceeding, it may seem to follow as the night the day that Zale violated the discharge order (which section 524(a)(2), to repeat, deems an injunction) by "an act to collect" a discharged debt, namely billing Cox periodically in accordance with the reaffirmation agreement. Bessette v. Avco Financial Services, Inc., supra, 230 F.3d at 445, so holds, but Pertuso v. Ford Motor Credit Corp., supra, 233 F.3d at 424-25, is to the contrary, pointing out that the debtor, there as here represented by counsel when he signed the reaffirmation

agreement, made the payments called for by the agreement voluntarily. He wanted to hold on to the property that he would have lost had the creditor repossessed the property to enforce its lien in it (though we have noted that often the creditor will not bother to do this because of the small value of the lien). The violation of section 524(c) thus was technical, trivial, and arguably, indeed, condoned and hence no violation at all, and certainly not the sort of thing that would warrant a proceeding for contempt. The debtor or his lawyer could have found out by a simple inquiry whether the agreement had been filed, had either of them thought that important, as doubtless neither did, since the debtor wanted to honor the agreement even though not legally obligated to. It is the same here. Cox's debt to Zale was listed on his schedule of discharged debts; his lawyer could have advised him that, the debt having been discharged, Cox didn't have to keep paying Zale--though the consequence of not paying might be that Zale would repossess the ring. Zale might not be able to enforce Cox's agreement to pay it $219, but it could enforce its security interest, which the order of discharge had not touched.

In these circumstances, as Pertuso holds, the inference that continued payment is voluntary, having only to do with the debtor's desire to retain his property and nothing to do with an unenforceable promise to pay, is compelling. Advised by counsel, Cox obtained the deal with Zale that he wanted: keep the ring, but keep paying for it, since otherwise Zale could repossess it. This implies that the stakes in this case are negative--that Cox would be worse off if he won than if he lost--since if he can get his $219 back, Zale can get the ring back, together with the rental value of the ring during the period since Zale, by signing the debt-reaffirmation agreement, forwent its right to repossess it. So Cox's suit for rescission is, not unusually when a class action is in the offing, both a frivolous suit and a nuisance suit--frivolous because the payments that Cox seeks to recoup were made voluntarily, a nuisance suit because its net expected value to Cox is negative. The purpose of the suit is to lay the groundwork for a frivolous, nuisance class action.

In the unlikely event that Zale really has committed a deliberate, indeed a flagrant, breach of the filing requirement (unlikely because, the bankruptcy court lacking power to void a debt-reaffirmation agreement when the debtor is represented by counsel, Zale would have no incentive not to file the agreement), Cox could ask the bankruptcy court to hold Zale in contempt

of the discharge order, which the statute makes an injunction. In such a proceeding he could obtain not only restitution of the payments he made (as in a suit for rescission), assuming they were involuntary, but also a reasonable attorney's fee to enable so small a claim to be litigated. These are standard remedies in cases of civil contempt. United States v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947); In re General Motors, 61 F.3d 256, 259 (4th Cir. 1995) (per curiam); South Suburban Housing Center v. Berry, 186 F.3d 851, 854-55 (7th Cir. 1999); BPS Guard Services Inc. v. International Union of Plant Guard Workers, 45 F.3d 205, 211 (7th Cir. 1995); Bessette v. Avco Financial Services, supra, 230 F.3d at 445; 1 Dan B. Dobbs, Dobbs Law of Remedies: Damages-Equity-Restitution sec. 2.8(2), pp. 194-95 (2d ed. 1993). The victim of a violation of the statutory injunction might even be able to obtain punitive damages, though presumably only if he could prove criminal contempt, In re General Motors, supra, 61 F.3d at 259; In re Power Recovery Systems, Inc., 950 F.2d 798, 802 (1st Cir. 1991); but see Bessette v. Avco Financial Services, supra, 230 F.3d at 445, since punishment is the purpose of criminal but not of civil contempt.

The remedy authorized by section 524(a)(2) has the advantage of placing responsibility for enforcing the discharge order in the court that issued it. That makes more sense than a suit seeking more limited relief (a suit for rescission would not entitle the successful plaintiff to attorneys' fees or punitive damages, Estate of Jones v. Kvamme, 449 N.W.2d 428, 432 (Minn. 1989); 2 Dobbs, supra, sec. 9.4, pp. 613-14), which could be filed in any federal district in which Cox could serve Zale. The court that issued the discharge order is in a better position to adjudicate the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy. In the context of debt-reaffirmation agreements the rescission remedy is, for the reasons we've explained, hokey.

Cox points out that an interpretation of the Bankruptcy Code that makes contempt the sole remedy for violation of the requirement that debt-reaffirmation agreements be filed precludes class-action relief, since the other debtors whose debt-reaffirmation agreements Zale failed to file with the bankruptcy court in which the debtor's bankruptcy was pending are scattered all over the country. Cox argues that given the small size of the debts and hence the small stakes in individual actions, only class-action treatment can assure adequate relief. Maybe so. But if really engaged in a nationwide scheme of flouting

discharge orders Zale can readily be humbled in a proceeding for criminal contempt, with the unlimited monetary sanctions that are available for such contempts when grave. Granted, it is unsettled whether bankruptcy judges have criminal-contempt powers. Compare In re Ragar, 3 F.3d 1174 (8th Cir. 1993), with In re Hipp, 895 F.2d 1503, 1515-16 (5th Cir. 1990). Their power to determine civil contempt is explicitly conferred by Fed. R. Bankr. 9020(b); see also 11 U.S.C. sec. 105; In re Power Recovery Systems, Inc., supra, 950 F.2d at 802; In re Rainbow Magazine, Inc., 77 F.3d 278, 284-85 (9th Cir. 1996); In re Skinner, 917 F.2d 444, 447-48 (10th Cir. 1990) (per curiam), but there is no corresponding grant of power to determine criminal contempt. It is true that 362(h) of the Bankruptcy Code expressly authorizes an award of punitive damages for the willful violation of the statutory injunction created by section 362 (the automatic stay), and it has been assumed that bankruptcy judges can enforce that subsection as well as the rest of section 362. In re Knaus, 889 F.2d 773, 775-76 (8th Cir. 1989); Budget Service Co. v. Better Homes of Virginia, Inc., 804 289, 292 (4th Cir. 1986). Since punitive damages are-- punitive, and it is punitive purpose that distinguishes criminal from civil contempt, section 362(h) implies that bankruptcy judges do have some criminal contempt power; but there is no corresponding grant of power in section 524 and the omission may have been deliberate. We can save the issue of the bankruptcy judges' criminal-contempt powers for another day, however. It is peripheral to the issue of the adequacy of criminal contempt as a remedy for violations of that section, since the district court, the court with primary jurisdiction in bankruptcy as we noted, can hold a party in criminal contempt for violating a statutory injunction. United States v. Guariglia, 962 F.2d 160, 162-63 (2d Cir. 1992).

We conclude, agreeing with Pertuso though without endorsing its analysis of private rights of action, that a suit for violation of section 524(c) can be brought only as a contempt action under section 524(a)(2). But recurring to our hypothetical case in which Zale sues Cox under the debt-reaffirmation agreement because Cox stops paying before the debt is paid off completely, we remind that in such a case the debtor can interpose section 524(c) as a defense to the suit as an alternative to seeking a contempt sanction in the bankruptcy court that issued him his discharge. If all he wants is to be left alone, and all the court in which Zale sues has to decide is whether the agreement was filed in the bankruptcy court, we cannot see any statutory or other objection to his being allowed

to elect that remedy. But once he has paid the debt in full and is not in jeopardy of being sued, affirmative relief can be sought only in the bankruptcy court that issued the discharge. In such a case the proper procedure would indeed be to reopen the bankruptcy proceeding, since the debtor would be seeking to enforce the order of discharge issued in that proceeding. A court retains jurisdiction to enforce its injunctions.

Affirmed.