In re Richard M. BECK and Mary Ann Beck, Debtors.

Richard M. Beck, on Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

Gold Key Lease, Inc., Defendant.

Bankruptcy No. 98–11845DWS.
Adversary No. 01–0384.

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 6, 2002.

Joseph C. Kohn, Kohn, Swift & Graf, P.C., Philadelphia, PA, Robert F. Mitsch, St. Paul, MN, for Plaintiff.

Stephen G. Harvey, Pepper Hamilton, LLP, Philadelphia, PA, Donald J. Querio, San Francisco, CA, for Defendant.

Dave P. Adams, Philadelphia, PA, United States Trustee.

## OPINION

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the motion ("Motion") of defendant Gold Key Lease, Inc. ("Gold Key") to strike class claims for lack of subject matter jurisdiction.[1] In the motion, Gold Key contends that the claim of Plaintiff, Richard Beck ("Plaintiff") for contempt of the discharge injunction, 11 U.S.C. § 524, cannot be adjudicated as a nationwide class action because only the court which has issued an injunction has the authority to enforce it. Plaintiff opposes the Motion asserting that unlike a traditional injunction, the discharge injunction is a statutory injunction which is the same from court to court and as such, there is no impediment to this court's enforcement of same without regard to the court that has issued it. Upon consideration and for the reasons set forth below, I grant Gold Key's Motion in part.

**BACKGROUND**

On February 12, 1998, Plaintiff and his wife (collectively referred to as "Debtors") filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. *Beck v. Gold Key Lease, Inc. (In re Beck)*, 272 B.R. 112, 115 (Bankr.E.D.Pa.2002) ("*Beck I* ") Approximately four months later, Debtors received a discharge in their bankruptcy case.[2] *Id.* Later the same month, their bankruptcy case was closed, and the trustee was discharged, having fully administered this no-asset case. *Id.*

On January 4, 2001, Plaintiff commenced the instant adversary proceeding against Gold Key by filing a complaint (the "Complaint") in the United States District Court for the Eastern District of Pennsylvania. *Id.* The facts underlying the Complaint are as follows:

(i) Plaintiff entered into an automobile lease (the "Lease"), dated November 14, 1996, covering a 1995 Chrysler Sebring (the "Vehicle")

(ii) Gold Key is the holder of the Lease;

(iii) The Lease, which was for a two year period ending on November 14, 1998, required Plaintiff to make twenty-four monthly payments of $341.54 and a final payment, at Plaintiff's option, of either (a) $18,300.74 plus applicable taxes or fees to purchase the Vehicle or (b) an amount equal to 15 cents for each mile in excess of 24,000 miles shown on the odometer;[3]

---

1. On March 26, 2002, a status conference was held in this case. At the conference, the parties agreed to treat the "Status Conference Statement," which Gold Key filed prior to the conference, as a motion to strike class claims for lack of subject matter jurisdiction. The parties further agreed, and I concurred, that this motion was preliminary to any consideration of the merits of the class action. Thus, the prerequisites of a class action as set forth in Fed.R.Bankr.P. 7023 are not at issue.

2. I take judicial notice of the docket in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi*, 1993 WL 69146, at *2 (N.D.Ill. 1993); *In re Paolino*, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); *see generally In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir.1995).

3. Paragraph 10 of the Lease states, in relevant part:

(iv) Prior to filing for bankruptcy, Plaintiff made the monthly payments due under the Lease;

(v) After filing for bankruptcy, Plaintiff retained possession of the Vehicle and continued making the payments due under the Lease;

(vi) On or about December 7, 1998, following the end of the Lease term on November 14, 1998, Plaintiff returned the Vehicle to Gold Key;

(vii) Shortly thereafter, Gold Key sent Plaintiff a final invoice on the Lease in the amount of $4,394.09 for excess miles driven on the Vehicle;

(viii) Plaintiff paid part of the amount listed on the invoice;

(ix) A balance remains due and owing on the $4,394.09 which Gold Key tried to collect; and

(x) Gold Key never sought or obtained a reaffirmation agreement from Plaintiff. *See id.* at 114–117. In Counts I and II of the Complaint,[4] Plaintiff alleged that Gold Key willfully violated 11 U.S.C. § 524(c) and 11 U.S.C. § 524(a), respectively.[5]

Gold Key subsequently filed a motion to dismiss. Rather than adjudicating the motion, District Judge Robreno referred Counts I and II of the Complaint to this Court for disposition in Debtors' bankruptcy case.[6] *Id.* at 116. I subsequently issued an Order reopening Debtors' bankruptcy case and directing that an adversary number be issued to the above-captioned action. Thereafter, Gold Key filed its renewed motion to dismiss, asserting that no private cause of action exists under § 524. *Id.* After the hearing on its dismissal motion, Gold Key requested the opportunity to supplement its motion to assert as an additional ground for dismissal that its claim for excess mileage under the Lease is a post-petition claim not subject to the discharge injunction of § 524(a) or the reaffirmation requirements of § 524(c). *Id.* at 116–17. Plaintiff did not object to the request, and I granted it. *Id.* at 117.

After the parties submitted briefs on the issue of whether the excess mileage charges were dischargeable, I decided the dismissal motion. I concluded that Gold Key's claim for excess mileage constituted a discharged claim but that the sole remedy for a violation of § 524 is contempt and that no private right of action exists under that Code provision. *Id.* at 118–130. Based on these conclusions, I granted the dismissal motion as to Count I but denied the motion as to Count II, finding that since Plaintiff had pled contempt as an alternate ground for recovery, dismissal of that count would be improper. *Id.* at 131.

---

If You do not buy the Vehicle at the end of the Lease, You will be required to pay 15 cents for each mile in excess of 24,000 miles shown on the odometer.

The parties refer to this monetary obligation as the excess mileage charge.

4. The Complaint contains three counts. Count III alleges that Gold Key violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

5. In Count I of the Complaint, Plaintiff alleged that by "solicitation and collection of monies from [him] ... and by application of such funds to satisfy pre-petition debts of Plaintiff ... without first securing reaffirma-

tion agreements with the Bankruptcy Court," Gold Key wilfully violated "the reaffirmation requirements of 11 U.S.C. § 524(c)." Complaint ¶¶ 54–55. In Count II, Plaintiff asserted that "[b]y soliciting payment in the above-described manner, and by taking actions to collect, recover and/or offset debt as a personal liability of the discharged Plaintiff ...," Gold Key willfully violated the discharge injunction of 11 U.S.C. § 524(a)(2).

6. Judge Robreno stayed Count III of the Complaint "pending resolution of bankruptcy proceedings."

Gold Key subsequently filed an answer to the Complaint after which a status conference was held. The parties agreed that Gold Key's Status Conference Statement which asserts that this action cannot proceed as a class action because this Court "lacks the authority to examine the discharge injunctions of bankruptcy courts nationwide" would be treated as a motion to dismiss for lack of jurisdiction. *See supra* n. 1. Pursuant to a briefing schedule, Plaintiff submitted a memorandum of law in opposition to Gold Key's Motion, *see* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike Class Claims for Lack of Subject Matter Jurisdiction ("Plaintiff's Brief"), to which Gold Key filed a reply, *see* Gold Key Lease, Inc.'s Reply Memorandum on the Court's Authority to Enforce Discharge Orders Issued by Other Courts ("Gold Key's Reply"). Shortly thereafter, a hearing on the Motion was held. At the conclusion of the hearing, I took the matter under advisement.

## DISCUSSION

■ Pursuant to 11 U.S.C. § 524(a),[7] a discharge operates as a permanent injunction against actions to recover debts sub-

ject to the discharge. *In re Behrens,* 900 F.2d 97, 98 (7th Cir.1990); *Internal Revenue Service v. Germaine,* 152 B.R. 619, 623 (9th Cir. BAP 1993); *Molloy v. Primus Automotive Financial Services,* 247 B.R. 804, 815 (C.D.Cal.2000). The injunction is evidenced in this case by an order that states, *inter alia,* that "All creditors whose debts are discharged by this order ... are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above named debtor." Doc. No. 14.[8] That order, which takes the same form in each case, is "BY THE COURT" and bears the name of the judge who presided over the bankruptcy case. *Id.* Gold Key's Motion raises the narrow issue of whether this Court has authority to hold Gold Key in contempt for violating discharge injunctions issued not only by this Court but by bankruptcy courts nationwide.

■ As a general principle of law, only the court which issues an injunction has the authority to enforce it. Gold Key accurately cites United States Supreme Court and Circuit Court authority for this proposition,[9] *see* Motion at 2, which Plain-

---

7. Section 524(a)(2) provides that a discharge: operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt [referring to debt discharged under section 727, 944, 1141, 1228, or 1328] as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2).

8. A court may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." *In re Indian Palms Assoc.,* 61 F.3d 197, 205 (3d Cir.1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules)).

Fed.R.Bankr.P. 4004(e) states that the discharge order shall conform to the appropriate

Official Form. Form 18 as revised in September 1997 is the present appropriate form and the one presently utilized by this Court. It merely orders the debtor's discharge and on the back of the form explains "in plain English" the effects of the discharge, including the prohibition on collection of discharged debts. Committee Note to Form 18. The more detailed Order was at issue in *In re Henry,* 266 B.R. 457, 467 (Bankr.C.D.Cal. 2001). However, according to Judge Bufford, the fact that the Order contained the injunction language was of no significance because the content of the bankruptcy discharge, including the injunction, was specified by the statute. *Id.* at 467 n. 4.

9. *See, e.g., Thomas v. General Motors Corporation,* 522 U.S. 222, 236, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) ("Sanctions for violations of an injunction ... are generally adminis-

tiff does not refute. The rationale for this rule is articulated by the Fifth Circuit Court of Appeals in *Waffenschmidt v. MacKay,* 763 F.2d 711 (5th Cir.1985):

> Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order.[10] *See, e.g., Leman [v. Krentler–Arnold Hinge Last Co.], supra,* 284 U.S. [448] at 452, 52 S.Ct. 238 at 240 [76 L.Ed. 389 (1932)] (Disobedience constituted contempt of the court which entered the decree....); *Wilson v. United States,* 26 F.2d 215, 218 (8th Cir.1928); *Bedgood v. Cleland,* 554 F.Supp. 513, 517 (D.Minn.1982).
>
>> [T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the [ordering] court.... To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency....

tered by the court that issued the injunction."); *Klett v. Pim,* 965 F.2d 587, 591 (8th Cir.1992) (concluding that district court did not have subject matter jurisdiction over civil contempt claim because "it could only be brought in the court that issued the original injunction."); *The Lubrizol Corporation v. Exxon Corporation,* 871 F.2d 1279, 1290 (5th Cir.1989) (*quoting Dunham v. United States,* 289 F. 376, 378 (5th Cir.1923)) ("We have held that, 'It is the Court whose judgment or order has been defied which must try the contempt and pronounce judgment.'"); *Stiller v. Hardman,* 324 F.2d 626, 628 (2d Cir. 1963) ("Violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred.")

**10.** The Court quoted *Berry v. Midtown Service Corp.,* 104 F.2d 107, 110 (2d Cir.1939), which stated:

[T]he sole adjudication of contempts, and the punishments thereof [belong] exclusively ... to each respective court.

*In re Debs,* 158 U.S. 564, 594–95, 15 S.Ct. 900, 910, 39 L.Ed. 1092 (1895) (citations omitted).

Gold Key contends that this general principle applies to discharge injunctions. Advocating the opposite view, Plaintiff asserts that Gold Key's argument has been "routinely rejected by courts throughout the United States."[11] Plaintiff's Brief at 9. According to Plaintiff, the basis for the rejection is that the discharge injunction is "exactly the same for each and every debtor throughout the country." *Id.* Because it is not "individually crafted" like a traditional injunction, he contends that there should be no barrier to my enforcing another court's order. *Id.* As authority for his position, Plaintiff cites the following three cases: *Cox v. Zale Delaware, Inc.,* 239 F.3d 910 (7th Cir.2001); *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439 (1st Cir.2000), *cert. denied,* 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018

> Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with.

*Id.* at 110–11, *quoting Lineker v. Dillon,* 275 F. 460 (N.D.Cal.1921).

**11.** In addition to focusing on the narrow issue of whether a court has authority to enforce another court's discharge order, Plaintiff devotes a substantial portion of his brief to the issue of whether a bankruptcy court has, as a general principle, the jurisdictional authority to entertain a class action in a core proceeding. *See* Plaintiff's Brief at 3–9. This issue is irrelevant to the matter *sub judice.*

(2001); and an unpublished decision in *In re Heath*, No. 88–42576 (Bankr.N.D.Miss. October 31, 1997).[12]

In *Cox*, the debtor paid the balance due on a discharged debt pursuant to the terms of a reaffirmation agreement which he subsequently learned was unenforceable and void because it had not been filed as required by 11 U.S.C. § 524(c)(3). He filed a class action suit seeking to rescind the agreement (and those of the class members) and recover the amount which he had paid to the creditor after the bankruptcy court entered its order discharging his scheduled debts. The issue before the Seventh Circuit was whether the plaintiff could remedy the creditor's violation of § 524(c) by bringing an action for rescission or was limited to bringing a motion for contempt of court based on the discharge injunction contained in § 524(a). The Seventh Circuit ruled that contempt is the exclusive remedy for violations of § 524(c). Elaborating on its reasons for so holding, the Seventh Circuit commented upon the issue in dispute here, stating:

> The remedy authorized by section 524(a)(2) has the advantage of placing responsibility for enforcing the discharge order in the court that issued it. That makes more sense than a suit seeking more limited relief (a suit for rescission would not entitle the successful plaintiff to attorneys' fees or punitive damages), which could be filed in any federal district in which Cox could serve Zale. The court that issued the discharge order is in a better position to adjudicate the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy.

239 F.3d at 916 (citations omitted). As the Seventh Circuit conveys in this passage, it favors enforcement of the discharge injunction by the court which issues the injunction. This view supports *Gold Key's argument* and contradicts Plaintiff's position which lead me to wonder why Plaintiff cited the case. A review of Plaintiff's brief discloses the reason—in the course of its opinion, the Seventh Circuit makes the statement that "suits under the Bankruptcy Code, presumably including suits for rescission, can proceed as class actions in appropriate circumstances." *Id.* at 914. While this general statement may lend credence to the view that suits for rescission can be brought as class actions in bankruptcy, it does not provide support for the Plaintiff's position that a bankruptcy court has authority to enforce the discharge injunctions of courts nationwide.

The First Circuit's *Bessette* decision provides a thread to weave into Plaintiff's foundational garment, but it does not stand for the broad proposition that Plaintiff advocates as plainly evidenced when the district court revisited the case on reversal and remand. The debtor in *Bessette* executed a reaffirmation agreement that was never filed with the court and did not satisfy other requirements of § 524. She filed suit in the district court for the district of Rhode Island seeking to recover damages for, *inter alia*, violation of the discharge injunction. At issue was the creditor's misconduct in securing a reaffirmation of a pre-petition debt successfully discharged. In response to a motion to dismiss, the debtor raised two theories. She argued that § 524 provides a private right of action and, alternatively, that the district court was authorized to provide

---

**12.** Plaintiff also cites *In re Henry*, 266 B.R. 457, 467 n. 4 (Bankr.C.D.Cal.2001), for the court's statement that "[t]he content of a bankruptcy discharge, including the discharge injunction, is created by statute." Not present in that case was the disputed issue here, *i.e.*, whether the court could enforce violations of discharge injunctions emanating from other courts under its contempt powers.

relief for violation of § 524 under § 105(a). The district court rejected both arguments. On appeal, the First Circuit found it unnecessary to address whether a private right of action exists under § 524 since it agreed with the appellee/creditor that violations of § 524 can be enforced through the statutory contempt powers available under § 105. The circuit court then focused on the district court's view that the contempt proceeding should be brought before the bankruptcy court since "it would be unable to fashion relief for all the named plaintiffs, because 'sanctions for violations of an injunction, in any event, are generally administered by the court that issued the injunction.'" *Id.* at 445 (*quoting Bessette*, 240 B.R. at 156 (citations omitted)). Disagreeing, the First Circuit stated, in pertinent part:

> [T]his theory is certainly not without support, *see e.g., Transamerica Fin. Servs.*, 1999 WL 33117201, at *3; *Cox [v. Zale Delaware, Inc.*, No. 97 C 4464,] 1998 WL 397841, at *3–4 [(N.D.Ill., July 13, 1998)] (dismissing claims without prejudice to be brought in bankruptcy court); *Pereira [v. First North American National Bank*, 223 B.R. 28,] 31 [(N.D.Ga.1998)] ("[T]he court whose order has been defied must entertain the contempt action."), [but] we believe that the contrary authority is more persuasive when dealing, as here, with violation of a purely statutory order. *See, e.g., Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1555 (11th Cir.1996) (recognizing district court's authority to dispose of contempt action for violation of automatic stay); *Malone*, 245 B.R. [389,] 393 [(E.D.Cal.2000)] (ordering the case withdrawn from bankruptcy for district court to enforce § 524 through its § 105(a) powers); *Williams v. Sears, Roebuck & Co. (In re Williams)*, 244 B.R. 858, 867–68 (S.D.Ga.2000) (retaining jurisdiction

over contempt claims so long as discharge injunction was issued within the same district court). [Debtor] seeks enforcement of the statutory injunction set forth in § 524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance. Thus, few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here.

> As a district court sitting in bankruptcy is similarly authorized to invoke its equitable powers under § 105 when necessary to carry out the provisions of the Bankruptcy Code, *see Jove Eng'g, [Inc. v. IRS (In re Jove Eng'g, Inc.)]*, 92 F.3d [1539], 1554 [(11th Cir.1996)]; *Green v. Drexler (In re Feit & Drexler, Inc.)*, 760 F.2d 406, 414–15 (2d Cir.1985); *Malone [v. Norwest Fin. California, Inc.*], 245 B.R. [389], 394 [(E.D.Cal.2000)], we reverse the district court's holding that appellant could only bring her claims in the court that issued the original discharge order and remand for the district court's consideration of enforcement of § 524 through § 105. *See Williams*, 244 B.R. at 867–68.

230 F.3d at 445–46. Plaintiff focuses on the First Circuit's observation that the § 524 statutory injunction is not individually crafted so that "few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here," *id.* at 445, and seeks to extend that rationale beyond the narrow facts of *Bessette* (i.e., a district court enforcing the injunction entered by the bankruptcy court of its district) to a bankruptcy court enforcing injunctions entered in other districts.

Notably the appeal was only lodged by *Bessette*, the Rhode Island debtor. *Id.* at 442 n. 2. A reading of the district court decision reveals that the second plaintiff Francisco Gonzalez received his discharge

from a California bankruptcy court. *Bessette v. AVCO Financial Services, Inc.*, 240 B.R. 147, 152 (D.R.I.1999), *aff'd in part and vacated in part* by 230 F.3d 439 (1st Cir.2000). This explains the district court's observation that it "would be unable to fashion relief for all of the named plaintiffs because sanctions for violations of an injunction, in any event, are generally administered by the court that issued the injunction." *Id.* at 156 (internal quotation omitted). It also explains why the circuit court's support for its conclusion that the district court could enforce the bankruptcy court's injunction begins by stating that "[a]s a district court *sitting in bankruptcy* is similarly authorized to invoke its equitable powers under § 105[,]" 230 F.3d at 446, and was based on cases that did likewise by withdrawing the reference from the bankruptcy court or retaining jurisdiction so long as the discharge injunction was issued within the same district court. Thus, notwithstanding the First Circuit's observation about the characteristics of a statutory discharge, the holding of the case is that the district court erred in refusing to enforce a discharge entered by its bankruptcy court.[13] To draw from this case the conclusion that a bankruptcy court (or even a district court sitting in bankruptcy) can utilize its contempt powers to enforce injunctions issued across the nation is an unwarranted.

On remand, in a decision released since the parties submitted their briefs, the district court rejected the broad interpretation of the First Circuit decision advocated by Plaintiff here. *Bessette v. Avco Financial Services, Inc.*, 279 B.R. 442 (D.R.I. 2002). Addressing the defendant's motion to dismiss and to strike class certification, the district court recognized two reasons that its jurisdiction was limited over any potential class action. First, it held that to the extent that "additional claims do not stem from the bankruptcy estate or affect the size of the estate," the bankruptcy court lacks subject matter jurisdiction and that judicial economy does not justify a contrary conclusion. *Id.* at 448.[14] Second, and responsive to the legal issue disputed by the parties here, it held that its jurisdiction was also limited by its ability to fashion a remedy. *Id.* at 449. Concluding that only the court that issues an order has authority to hold a person in contempt for violating it, the district court reasoned as follows:

> The Court can only provide a remedy consistent with the contempt power of the Bankruptcy Court. [citation omitted]. The First Circuit concluded that when the order was a statutory order, the District Court could hear the contempt matter as well as the bankruptcy court. [citation omitted]. When an individual is in contempt, he or she has been found in violation of a court order. The Court that issues the order that was violated is the Court that determines whether a person is in contempt. [citations omitted]. While this Court can issue contempt findings for persons or

---

**13.** Accordingly, the Circuit Court directed the district court on remand to determine whether notwithstanding its standing order of reference of its bankruptcy jurisdiction to the bankruptcy court adopted under 28 U.S.C. § 28 U.S.C. § 157, it wished to retain jurisdiction under 28 U.S.C. § 157(d) or refer the case to the Bankruptcy Court for the District of Rhode Island. 230 F.3d at 447.

**14.** Gold Key does not advance this other reason relied upon by the *Bessette* court for denying nationwide class certification. In any event, since I conclude that dismissal of the class action as to debtors outside this district is warranted on the grounds that a contempt order must be enforced by the court that issues it, I need not address whether 28 U.S.C. § 1334 circumscribes this court's authority.

entities subject to an order of this Court, it cannot issue orders for parties not within its authority.

Jurisdictional rules help to prevent "the excessive use of judicial power." *United Elec., Radio and Mach. Workers of Amer. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1098 (1st Cir.1992) (*quoting United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988)). If a court could find persons in contempt who were not subject to its authority, it could sanction people who were not within its jurisdiction. This would be "inconsistent with the notion that the judiciary may exercise only those powers entrusted to it by law." *In re Providence Journal Co.*, 820 F.2d 1342, 1347 (1st Cir.1986). If one has not been subject to an order, one cannot violate an order, and cannot be sanctioned or punished for contempt. This very basic legal premise determines subject matter jurisdiction in this case. For the foregoing reasons, the Court only has jurisdiction over claims that are related to bankruptcy estates in the District of Rhode Island.

*Id.* at 449. In short, the district court ruled that while, pursuant to the First Circuit's conclusions, it had subject matter jurisdiction to hold persons or entities in contempt for violating discharge orders issued by the bankruptcy courts *of its district*, it did not have subject matter jurisdiction to hold persons or entities in contempt of discharge orders issued by bankruptcy courts *outside of its district.*

The third decision cited by Plaintiff, *In re Heath, supra,* is an unpublished decision by the bankruptcy court in the Northern District of Mississippi. The debtor, on behalf of herself and other debtors throughout the country, claimed a violation of the discharge injunction of § 524(a)(2) based on the car finance creditor's practice of requiring debtors, who obtained a discharge of an unsecured deficiency claim in a bankruptcy case, to satisfy this deficiency claim prior to the extension of new financing. The issue before the bankruptcy court was whether it had jurisdiction to consider a class action involving claims of debtors whose discharge orders were entered by courts other than those of that district. Holding that it could, the court relied on the fact that the discharge injunction emanates from the Bankruptcy Code and as such is not a "specific ordered injunction." Moreover, it reasoned that if the creditor's position limiting jurisdiction to orders of the district were correct, "there could never be a class action lawsuit to rectify a creditor's pervasive practice of violating the discharges of multiple bankrupt debtors." *Id.* at 5.

The only rationale provided for rejecting the argument that only the issuing court has authority to hold a party in contempt for violating the discharge injunction is that such injunctions arise from the statute and are not individually crafted by the court. However, no reason is advanced why this should make a difference as it would, for example, if the court were being asked to interpret an order. The policy behind the jurisdictional limitation on enforcement of contempt orders requires the issuing court to enforce its own orders in order to preserve the integrity of its processes. Violation of the injunctive effect of discharge order is a disobedience like the violation of any court order. The fact that the order is not "individually crafted" does not detract from the court's responsibility to insure that it has been obeyed and does not provide a basis to allow its enforcement powers to be delegated to other courts. While I agree with the *Heath* Court that the result of such a rule may be that class action relief is limited where there is no private cause of action and the

plaintiff's sole remedy is in contempt, that deficiency is properly addressed by Congress and not judicial legislation. *Cf. In re Federal–Mogul Global, Inc.,* 300 F.3d 368, 390 (3d Cir.2002) (recognizing that "a procedure authorizing the aggregation of state court cases ... into a nationwide class action would provide a mechanism" for a global hearing at which the trial court could perform the gatekeeping obligation set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), but rejecting same noting that Congress had not adopted such a solution).

Plaintiff advances one other argument in support of his position that bears discussion. He cites Rule 4004(f) of the Federal Rules of Bankruptcy Procedure which allows a debtor to register an order of discharge that has become final in "any other district by filing a certified copy of the order in the office of the clerk of that district." Fed. R. Bankr.P. 4004(f). When so registered, the order of discharge has the "same effect as an order of the court of the district where registered," Fed. R.Bankr.P. 4004(f), meaning that a court of the district in which the discharge order has been registered could enforce the order as if it had originally issued it. *See* 9 Collier on Bankruptcy § 4004.07, at 4004–22 (15th ed. 2002) ("Once the discharge order has been registered in a judicial district, it may be enforced by the court in that district as fully as it if had originally been entered as an order of that court."). By using this rule and registering his or her order of discharge in another district, a plaintiff can empower another court, other than the court which originally issued the order of discharge, to hold a party in

contempt for violating the discharge injunction.[15] Plaintiff reasons that since Rule 4004(f) authorizes courts other than the issuing court to enforce a discharge injunction, the general principle that only the court which issues an injunction has the authority to enforce it obviously does not apply to discharge injunctions. Therefore, plaintiff continues, enforcement by a non-issuing court of discharge injunctions issued nationwide is proper. I respectfully disagree. In my view, the fact that the legislature enacted a rule enabling debtors who comply with the procedure set forth therein to obtain enforcement of a discharge injunction from a court other than the issuing court indicates that, unless the procedure set forth in the rule is followed, no other court besides the issuing court has authority to enforce the discharge injunction. Consequently, I conclude that Rule 4004(f), rather than supporting Plaintiff's position, undermines it. Moreover, as the order as registered has the same effect as if that court had issued it, the rationale for local enforcement (*i.e.,* to maintain the integrity of the court's processes) is undiminished. Plaintiff has not alleged in the Complaint, and there is no evidence in the record, that members of the putative class have registered their discharge orders from other courts in this district. Absent such registration, I have no authority under Rule 4004(f) to enforce discharge orders issued nationwide to the putative class members.

As authority for its position that I lack jurisdiction over a nationwide class, Gold Key cites two circuit court decisions, namely *Cox, supra,* which I have already discussed, and *Walls v. Wells Fargo Bank (In re Walls),* 276 F.3d 502 (9th Cir.2002).

**15.** This Rule has a two-fold purpose: to facilitate the enforcement of the debtor's rights under a discharge order and to provide the debtor with another opportunity to provide notice of his or her discharge. Commentary to Rule 4004(f), Norton Bankruptcy Law and Practice 2d at 266 (2002).

In *Walls*, the Ninth Circuit reviewed the district court's conclusion that no implied right of action exists under § 524. The district court had reversed the bankruptcy court's ruling to the contrary and had referred Wall's request for contempt to the bankruptcy court.[16] As such, the Ninth Circuit expressly observed that the contempt proceeding was not before it, and stated that it was "express[ing] no view one way or the other on the extent of the court's powers in determining Wall's claims." *Id.* at 507.

In affirming the district court, the Ninth Circuit rejected the invitation to expand the remedies for violating § 524 by finding that § 105 provides the vehicle to imply a private substantive right to implement § 524. The Ninth Circuit opined, in relevant part:

> [F]or us to imply a private right of action would undercut the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code," *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 914 (9th Cir.1996), because it *has* an enforcement mechanism for violations of § 524 via the contempt remedies available under § 105(a). *Implying a private remedy here could put enforcement of the discharge injunction in the hands of a court that did not issue it (perhaps even in the hands of a jury), which is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction.*

276 F.3d at 509 (emphasis added). Thus, although the Ninth Circuit stated that it refused to express a view on the extent of the court's powers to adjudicate the contempt proceeding remanded to the bankruptcy court, it appears that the rationale for its holding that there is no private right of action under § 524 is premised on its view that only the court which issues a discharge order has authority through its contempt powers to enforce the injunction.

Gold Key's position that I may not hold it in contempt for violating discharge injunctions issued by bankruptcy courts nationwide is also supported by the overwhelming number of lower courts to consider the issue. *See Williams v. Sears, Roebuck and Co.,* 244 B.R. 858, 867 (S.D.Ga.2000) (internal quotation omitted) (concluding that violations of § 524 can be remedied only by contempt proceedings and that only the court whose order has been defied " 'has jurisdiction to entertain the contempt action.' "); *Pereira v. First North American National Bank,* 223 B.R. 28, 31 (N.D.Ga.1998) (holding that the bankruptcy court that issued the discharge injunction at issue is the proper forum for contempt action); *Nelson v. Providi-*

---

**16.** In a decision not discussed by either party, the bankruptcy court on remand from the district court, addressed the issue before me, *i.e.,* the use of the contempt power to enforce the discharge injunction by a court other than the court issuing the order, and concluded that there was no jurisdictional impediment to it so doing. *Walls v. Wells Fargo Bank (In re Walls),* 262 B.R. 519 (Bankr.E.D.Cal.2001). In reaching this conclusion, the bankruptcy court relied on *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439 (1st Cir.2000) and *In re Noletto,* 244 B.R. 845 (Bankr.S.D.Ala. 2000), and the familiar argument that a statu-

tory injunction should be treated differently than orders for injunctive relief individually fashioned by individual judges. To the extent this decision has not been implicitly overruled by the Ninth Circuit, I respectfully decline to follow it. Neither the Circuit decision in *Bessette, see supra.* pp. 168–70, nor the *Noletto* decision which does not discuss a court's authority to issue sanctions for violation of another court's order or injunction support the court's conclusion. Moreover, as discussed above, I am unpersuaded that the discharge injunction requires some special exception to the rule limiting a court's jurisdiction to enforce another court's order.

an National Bank (In re Nelson), 234 B.R. 528, 533–34 (Bankr.M.D.Fla.1999) (holding that the court had no jurisdiction to "entertain a private cause of action for damages [for violations of § 524] by debtors who obtained their discharge" in another court); and Transamerica Financial Services v. Danney, 1999 WL 33117201, at *2–*3 (D.Maine Dec.23, 1999) (ruling that remedy for violation of a creditor of a discharge order is a contempt proceeding in the court which issued the order). See also In re Kewanee Boiler Corporation, 270 B.R. 912, 920 (Bankr.N.D.Ill.2002) (reasoning that since violations of the discharge injunction may be treated as civil contempt, § 524(a)(2) "leaves responsibility for enforcing the injunction in the court that issued the discharge."). Contrary then to the assertion made by Plaintiff in his brief, see supra at 167, it appears that it is Plaintiff's position that has been "routinely rejected," not that of Gold Key.

A review of the legislative history to § 524 further supports the conclusion that only the court which issues a discharge order that gives rise to a discharge injunction has authority through its contempt powers to enforce the injunction. In Per-

tuso v. Ford Motor Credit Company, 233 F.3d 417 (6th Cir.2000), the Sixth Circuit noted that in 1984, when Congress amended § 362 to provide an express right of action, it also amended § 524 but chose not to add a private right of action to remedy violations of that section. The Sixth Circuit further observed that when the 1984 amendments were made, "Congress knew that courts were enforcing § 524 through contempt proceedings[.]" Id. Certainly Congress was also aware at that time of the general principle that only the court which issues an injunction has the authority to enforce it. Accordingly, Congress' decision not to add an express cause of action to § 524 to remedy violations of that section can be viewed as a tacit approval of the enforcement scheme which leaves authority for remedying violations of § 524 in the hands of the court which issued the injunction. Had Congress intended to alter this scheme to enable any court nationwide to enforce a discharge order of another court, it could have done so by including a private cause of action in § 524.[17] To sanction the use of the contempt remedy in the manner Plaintiff advocates would allow Plaintiff to accomplish indirectly what Congress has not authorized directly.

17. In Pertuso, the Sixth Circuit acknowledged that Congress was "currently considering bankruptcy reform, including a proposed amendment that would provide a private right of action under § 524." Subsequent to Pertuso, the district court in DuBois v. Ford Motor Credit Company, 2001 WL 290353 (D.Minn. Jan.19, 2001), aff'd, 276 F.3d 1019 (8th Cir. 2002), provided an update on the bankruptcy reform bill noting that since the Pertuso opinion was filed, Congress acted on the bankruptcy reform bill, and that "the legislative history of that bill shows that Congress did not intend § 524 to imply a private right of action." 2001 WL 290353, at *4–*5. Its conclusion was based on the fact that the precursor to the Bankruptcy Reform Act of 2000 contained an explicit private right of action when it was sent to the Senate for consideration but contained no such provision when enacted. Commenting on these findings, the district court stated:

The fact that the Senate version of the bill removed the private right of action from the House bill is instructive. Clearly, the Senate did not wish to create such a right, and the House acquiesced to the Senate on this issue. Moreover, the fact that the House found it necessary to include a private right of action in § 524 indicates that it believed that no private right of action under this section existed previously.

Id. at *5. The Bankruptcy legislation was vetoed by President Clinton for unrelated reasons. The bankruptcy bills currently being considered in the Senate and House of Representatives still provide no private right of action under § 524.

■ As a back-up argument, Plaintiff contends that I have authority, through the district court, to certify a class of putative debtors from this district. Plaintiff's Brief at 11. In support of this position, Plaintiff cites *Williams v. Sears, Roebuck and Co. (In re Williams)*, 244 B.R. 858 (S.D.Ga.2000).[18] In *Williams*, the district court held that, since "[o]nly 'the court whose order has been defied' . . . has jurisdiction to 'entertain the contempt action[,]' "it had jurisdiction over the damage claims of members of the putative class who received a discharge from the Southern District of Georgia but not members of the class who received their discharge elsewhere. *Id.* at 867. Citing to *Williams*, the district court in *Bessette*, *supra*, held that it only had jurisdiction over claims for contempt based on § 524 asserted by debtors in bankruptcy cases in the District of Rhode Island. 279 B.R. at 449, 455.

Both cases focus on a jurisdictional line drawn between the home district and other district courts. By implication, they reject the notion that a bankruptcy judge is limited to adjudicating only enforcement ac-

tions with respect to debtors whose cases he or she administered. That issue was raised in *United States v. Corn*, 836 F.2d 889 (5th Cir.1988), where the court acknowledged the general rule that only the court that issues an injunction can enforce it but rejected the notion that court and judge were synonymous. The injunction, it explained, was issued by the court and "was not the personal command of Judge Seals, Judge Sterling, or any other judge on that court," reasoning that each judge of a multi-district court has the same power and authority as each other judge. *Id.* at 892.

■ Gold Key does not address this proposition but rather contends that I should defer ruling on whether I have authority to adjudicate contempt claims with respect to all discharge orders entered in this district until Plaintiff seeks to redefine the scope of his class. Gold Key's Reply at 6 n. 3. I find that approach not only unnecessary but likely to cause unwarranted delay. Keeping in mind that the parties agreed that the Motion was to be treated as a motion to strike class

---

18. While the Plaintiff's argument appears to miss the point of the court's analysis, *Williams* does support the alternative request Plaintiff makes. In *Williams*, exercising its bankruptcy jurisdiction by reason of the withdrawal of the reference, the district court explains why its jurisdiction cannot reach cases commenced in other districts. As it states,

> The function of § 1334(e) is clear—to insure that only one court administers the bankruptcy estate of a debtor. Otherwise, the orderly distribution of the assets of the debtor to holders of claims against the estate—one of the main functions of bankruptcy—could not be accomplished. Congress has chosen to vest exclusive jurisdiction over the property of a bankruptcy estate in the "[t]he district court in which a case under title 11 is commenced or is pending." A procedural rule such as Rule 23 authorizing class actions, of

course, cannot be read as enlarging the limited jurisdictional grant of § 1334. Fed.R.Civ.P. 82; 28 U.S.C. § 2072(b); *Amchem Products v. Windsor*, 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). If the claims raised by Plaintiff on behalf of the putative members of the debtor class are "property" of each individual debtor's bankruptcy estate, §§ 1334(e) prohibits this Court—or any court other than "[t]he district court in which [the] case under title 11 is commenced or pending" for that matter—from exercising jurisdiction over that property.

*Id.* at 865. The same impediment did not apply to debtors whose cases were commenced in that district and accordingly, the claims of the putative class members whose cases were commenced in the Bankruptcy Court for the District of Georgia were not dismissed.

176

claims for lack of jurisdiction, I will grant the Motion in part. To the extent that class claims are lodged on behalf of debtors whose discharge orders emanate from courts outside this district, they will be struck. Plaintiff shall amend his Complaint consistent with this ruling.