Wayne G. BARRETT, et al., Plaintiffs,

v.

**AVCO FINANCIAL SERVICES MANAGEMENT COMPANY, et al., Defendants.**

**No. CIV.A. 99–30009–MAP.**

United States District Court, D. Massachusetts.

April 17, 2003.

Daniel A. Edelman, Cathleen M. Combs, Tara L. Goodwin, Edelman, Combs & Latturner, Chicago, IL, Christopher M. Lefebvre, Law Offices of Claude Lefebvre & Sons, Pawtucket, RI, for Wayne G. Barrett Kim A. Barrett, for themselves and on behalf of all others similarly situated Plaintiffs.

Marc A. Crisafulli, Edwards & Angell, LLP, Providence, RI, Patricia A. Sullivan, Edwards & Angell, LLP, Boston, MA, for Avco Financial Services Management Company, Avco Financial Services of Massachusetts, Inc., Defendants.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS*

(Docket No. 60)

PONSOR, District Judge.

Plaintiff has brought this action, purportedly for himself and all others similarly situated in the United States, alleging that the defendant collection agencies (together "AVCO"), by seeking to collect a debt which had been incurred prior to filing a Chapter 7 bankruptcy petition, violated the Bankruptcy Court's discharge order. The case has been delayed substantially while parallel Rhode Island litigation has worked its way through the District of Rhode Island, up to the First Circuit Court of Appeals and back. See *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439 (1st Cir.), as amended 2000 U.S. at LEXIS 33737 (Dec. 15, 2000).

On September 27, 2002, based upon *Bessette* and the Rhode Island District Court's opinion on remand, the defendants filed a motion to strike the class action allegations in this case. The motion was thereafter referred to Magistrate Judge Kenneth P. Neiman for Report and Recommendation, and on March 25, 2003, Magistrate Judge Neiman recommended that the motion be allowed with regard to any nationwide class, but denied without prejudice with regard to a class of debtors within the Commonwealth of Massachusetts.

Magistrate Judge Neiman's recommendation is well reasoned and supported by the predominant weight of authority both within the First Circuit and throughout the country.[1] For this reason, upon *de novo* review, the Report and Recommendation of March 25, 2003 (Docket No. 71) is hereby ADOPTED. The defendants' Motion to Strike (Docket No. 60) is hereby ALLOWED with regard to any claim for nationwide class certification. With regard to a potential class comprising solely debtors in Massachusetts, the Motion to Strike is hereby DENIED, without prejudice.

The clerk will set this matter down for a status conference to determine the course of future proceedings in the case. Since this matter is one of the oldest cases on the court's docket, counsel should be pre-

---

1. The court acknowledges that plaintiff's recent submission of a law review article suggests significant contrary opinion. Nevertheless, as noted, the stronger and better reasoned authority favors the Magistrate Judge's recommendation.

pared to move promptly through the pretrial phase to disposition.

It is So Ordered.

### REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS (Docket No. 60)

NEIMAN, United States Magistrate Judge.

In his one count complaint, Wayne Barrett ("Plaintiff"), for himself and other similarly situated individuals, alleges that the defendant collection agencies (together "Avco"), by seeking to collect a debt which had been incurred prior to filing his Chapter 7 bankruptcy petition, violated the Bankruptcy Court's discharge order. Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), and in conjunction with Rule 23, Avco has moved to strike Plaintiff's class allegations. According to Avco, the court lacks jurisdiction over the claims of putative class members whose bankruptcies were discharged outside the District of Massachusetts. Moreover, Avco argues, Plaintiff cannot satisfy certain class action requirements with regard to those remaining debtors whose bankruptcies were discharged in this district.

Avco's motion to strike has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Rule 3(a)(8) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts. For the reasons which follow, the court will recommend that Avco's motion be allowed insofar as Plaintiff seeks to represent a nationwide class. However, to the extent Avco targets putative class members within the District of Massachusetts, the court will recommend that the motion to strike be denied.

### I. STANDARDS OF REVIEW

Rule 23 governs class actions. Subsection (a) of the rule sets forth four prerequisites for filing a class action, often referred to as numerosity, commonality, typicality and adequacy of representation:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). For its part, subsection (b)(3) of the rule requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). *See generally, Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 37–42 (1st Cir.2003). In turn, subsection (c)(1) provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Finally, subsection (d)(4) allows the court to make an appropriate order "requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons."

Rule 12(b)(1), upon which the first part of Avco's motion is grounded, empowers a party to seek dismissal of an action for "lack of jurisdiction over the subject matter." Rule 12(b)(6), upon which the second part of Avco's motion is based, allows a complaint to be dismissed for "fail[ing] to state a claim upon which relief can be granted." Both rules require the court to construe all allegations in favor of Plaintiff,

the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994). *See also Bessette v. Avco Fin. Servs., Inc.,* 279 B.R. 442, 451 (D.R.I.2002) (in considering motion to strike class allegations "the burden is not on the party seeking class certification[;] rather, as the non-moving party, all reasonable inferences must be construed in [his] favor") (citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)).

## II. *Factual Background*

The following facts are alleged in the complaint. In June of 1994, Plaintiff and his wife, who has since passed away, (collectively "the Barretts"), purchased an aboveground swimming pool from a vendor for $2,358.55. (Second Amended Complaint (Docket No. 62) (hereinafter "Complaint") ¶ 30.) They financed the purchase through a loan from Avco. (*Id.*)

On June 9, 1995, the Barretts filed a Chapter 7 bankruptcy petition in the District of Massachusetts. (*Id.* ¶ 29.) A few weeks later, on July 17, 1995, they executed a "reaffirmation agreement," ostensibly under the authority of the Bankruptcy Court. (*Id.,* Exhibit B.) The reaffirmation agreement purportedly required the Barretts to pay Avco $2,358.55 plus interest at the rate of $60 per month. (*Id.* ¶ 32.) Avco, Plaintiff asserts, intentionally did not file the agreement with the Bankruptcy Court. (*Id.* ¶¶ 33, 38.)

The Barretts made regular monthly payments to Avco from September of 1995 through May of 1998. (*Id.* ¶ 40 and Exhibit C.) Meanwhile, on October 29, 1997, the Bankruptcy Court issued an order discharging the Barretts from all dischargeable debts, including the Avco obligation. (*Id.* ¶ 39.) According to the complaint, at least three other "victims"—Cheryl Bes-

sette and Nancy Pellogrino in Rhode Island and Francisco Gonzalez in California—signed reaffirmation agreements with Avco in circumstances similar to the Barretts'. (See *id.* ¶¶ 42–72.)

## III. *Procedural Background*

The Barretts commenced this action on January 20, 1999. At that time, a virtually identical case filed by Plaintiff's lawyer on Cheryl Bessette's behalf, *Bessette v. Avco Fin. Servs., Inc.,* C.A. No. 97–487L, had been pending in the District of Rhode Island for approximately a year and a half. On April 12, 1999, Avco moved to stay the present action pending a ruling from District Judge Ronald R. Lagueux of the District of Rhode Island on Avco's motion to dismiss Cheryl Bessette's complaint. District Judge Michael A. Ponsor allowed the motion to stay on August 18, 1999. (Docket No. 34.)

The *Bessette* motion to dismiss, as described more fully below, took some time to be resolved. Eventually, the First Circuit remanded the matter to Judge Lagueux who, on June 1, 2002, issued an order dismissing much of that case. In essence, Judge Lagueux made clear that Cheryl Bessette's complaint consisted of a single contempt claim and that she would not be allowed to pursue a nationwide class.

Following Judge Lagueux's ruling, Judge Ponsor lifted the stay in the instant matter (Docket No. 52) and established a preliminary schedule (Docket No. 56). In accord with that schedule, Plaintiff amended the complaint avowedly to conform with *Bessette*—i.e., he eliminated all but a single contempt claim—after which Avco filed the instant motion to strike Plaintiff's class allegations.

## IV. *Discussion*

The court will first lay out the statutory provisions relevant to Plaintiff's claim. It

will then describe the posture of *Bessette* which, as indicated, is closely tied to the instant matter. Finally, the court will analyze the substance of Avco's motion to strike.

## A. *Statutory Background*

The Bankruptcy Code's automatic stay provision, commonly referred to as "section 362," provides, *inter alia*, that the filing of a bankruptcy petition stays any act by a creditor to obtain possession of property of the debtor's estate, or to collect, assess or recover a claim against the debtor that arose prior to the filing. *See* 11 U.S.C. § 362(a)(3) and (6). The Code also provides in "section 524" that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Here, Plaintiff's single cause of action—his contempt claim—alleges that Avco willfully violated the discharge injunction of section 524 when it sought to collect debts he and the putative class members incurred prior to filing their bankruptcy petitions. (Complaint ¶ 99.) As a result, Plaintiff seeks relief pursuant to "section 105" (*id.* ¶ 102) which, in pertinent part, provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a).

In essence, Plaintiff challenges Avco's use of purported "invalid" reaffirmation agreements and its practice of "[m]aking

collection calls and sending payment demands to induce payments on invalid reaffirmation agreements." (*Id.* ¶¶ 100, 101.) Plaintiff acknowledges that reaffirmation agreements are not barred per se. *See* 11 U.S.C. § 524(c). He alleges, however, that Avco has violated one or more of the statutory "validity" requirements of section 524. In this regard, section 524 states that, to be "enforceable," a reaffirmation agreement must:

- be made prior to the granting of the discharge;
- "contain[ ] a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later";
- "contain[ ] a clear and conspicuous statement which advises the debtor that such agreement is not required";
- be filed with the court;
- be accompanied, in the case of a represented debtor, by a declaration or affidavit of the attorney stating that the agreement is voluntary, fully informed and does not impose an undue hardship on the debtor or the debtor's family and is in the best interest of the debtor; and
- be approved by the court in the case of an unrepresented debtor.

11 U.S.C. § 524(c).[2]

It is important to point out that Plaintiff does not seek to assert a private right of

---

2. Subsection (c) of section 524 provides, in its entirety, as follows:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankrupt-

cy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2) (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be

action *directly* under section 524. He originally included such a cause of action in his complaint, but he voluntarily dropped that claim following the outcome in *Bessette*. Rather, the single count remaining in Plaintiff's complaint seeks to hold Avco liable in contempt for violating one of more provisions of section 524 *via* section 105.

## B. *Bessette v. Avco Fin. Servs., Inc.*

In the original *Bessette* complaint in the District of Rhode Island, Cheryl Bessette alleged six counts against Avco. These included a purported implied right of action emanating from section 524, a contempt claim under section 105, claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and a state law claim for unjust enrichment. Francisco Gonzalez, who is also an alleged victim in the case at bar, was added as a second plaintiff in the *Bessette* matter in September of 1997. Thereafter, the parties commenced discovery which was focused primarily on practices within the District of Rhode Island.

On October 18, 1999, Judge Lagueux issued a decision in which he dismissed Cheryl Bessette's complaint in its entirety. See *Bessette v. AVCO Fin. Servs., Inc.*, 240 B.R. 147 (D.R.I.1999) (hereinafter *"Bessette I"*). As to the contempt claim in particular, Judge Lagueux held that only the bankruptcy court which issued the discharge order—not the district court sitting in bankruptcy—could sanction a party under section 105 for failing to abide by the discharge order. Although both plaintiffs appealed that ruling, Francisco Gonzalez soon dropped out of the case and his claims were dismissed with prejudice. As a result, it appears that Francisco Gonzalez may not make a claim here.

On October 27, 2000, the First Circuit affirmed most of Judge Lagueux's decision. *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439 (1st Cir.), as *amended*, 2000 U.S.App. LEXIS 33737 (Dec. 15, 2000) (hereinafter *"Bessette II"*). It held

rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;
(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—
(A) such agreement represents a fully informed and voluntary agreement by the debtor;
(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—(i) an agreement of the kind specified in this subsection; and (ii) any default under such an agreement;
(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;
(5) the provisions of subsection (d) of this section have been complied with; and
(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and (ii) in the best interest of the debtor.
(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.
11 U.S.C. § 524(c).

that the RICO and unjust enrichment claims were properly dismissed, but vacated the dismissal of the contempt claim. As to the purported private right of action under section 524, the court noted that the circuits were divided on the issue but saw "no reason to jump into the fray with the complex analysis required by *Cort v. Ash*[, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),] when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely § 105(a)." *Id.* at 444.

As for the section 105 contempt claim, the First Circuit concluded that a district court sitting in bankruptcy, just like a bankruptcy court which issues the original discharge order, is "authorized to invoke its equitable powers under § 105 when necessary to carry out the provisions of the Bankruptcy Code." *Id.* at 446. However, "the decision of whether the district court sitting in bankruptcy should retain jurisdiction or refer the parties to the bankruptcy court," the First Circuit went on to explain, "rests most appropriately with the district court on remand." *Id.*[3] The Supreme Court denied Avco's subsequent petition for *certiorari. See Textron Funding Corp. v. Bessette*, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001).

Upon remand, Cheryl Bessette tried not only to reassert a private right of action emanating from section 524 but to revive her RICO claim as well. Avco again moved to dismiss, arguing that the only viable claim that could be asserted in the wake of the First Circuit's decision was an equitable one for contempt of the discharge order via section 105. Avco also challenged Cheryl Bessette's ability to represent a nationwide class.

On June 7, 2002, Judge Lagueux ruled on Avco's motion to dismiss. *See Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442 (D.R.I.2002) (hereinafter *"Bessette III"*). Judge Lagueux held that Cheryl Bessette's only viable claim was under section 105 for contempt of the discharge order, a claim for which he, the district court sitting in bankruptcy, could fashion a remedy. *See id.* at 454–55. Judge Lagueux also limited the potential class to debtors within the District of Rhode Island and, accordingly, allowed class certification discovery for that district only. *See id.* at 451–53. Until such discovery was completed, Judge Lagueux continued, Avco's motion to strike Cheryl Bessette's class allegations was premature. *Id.* at 451. The parties report that class certification discovery was completed in *Bessette* on September 27, 2002.

## C. *Analysis of Avco's Motion to Strike*

As indicated, Avco, in the instant motion to strike Plaintiff's class action allegations, makes two main arguments. It first argues that the court lacks jurisdiction over the claims of putative class members whose bankruptcies were discharged outside the District of Massachusetts. As for the debtors whose bankruptcies were discharged in this district, Avco argues that Plaintiff cannot satisfy the Rule 23(a) requirements of typicality and commonality or the Rule 23(b)(3) requirement that common questions of fact and law predominate.

---

**3.** This quoted sentence was made part of the First Circuit's opinion after Avco argued, in a petition for rehearing, that the original panel decision would " 'enable a debtor in a pending or closed bankruptcy case to bring a cause of action under Section 105(a) grounded upon a violation of Section 524 (or any other section of the Bankruptcy Code) in a federal district court in any jurisdiction in which the defendant may be subject to personal jurisdiction.' " *Bessette*, 2000 U.S.App. LEXIS 33737, at *1 (Dec. 15, 2000).

1. *Does the court have jurisdiction over non-Massachusetts debtors?*

██ The court believes that it lacks jurisdiction over the claims of putative class members whose bankruptcies were discharged outside the District of Massachusetts. In other words, the court aligns itself with Judge Lagueux in *Bessette III* on the jurisdictional issue, albeit on slightly different grounds. In the court's view, the reasoning of a number of other courts on this issue—including a recent decision Avco brought to this court's attention after oral argument, *Beck v. Gold Key Lease, Inc.*, 283 B.R. 163 (Bankr.E.D.Pa.2002)—is persuasive.

██ As Avco observes, it is a well-established principle that only the court that issued an order or injunction has subject matter jurisdiction to hold in contempt a violator of that order or injunction. *See Baker v. Gen. Motors Corp.*, 522 U.S. 222, 236, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (citing cases); *Beck*, 283 B.R. at 166–67. This general rule, Avco argues, applies in section 105 contempt actions, *see Williams v. Sears, Roebuck and Co.*, 244 B.R. 858, 867–68 (S.D.Ga.2000), *aff'd*, No. 01–13285, 34 Fed.Appx. 967, 2002 WL 649108 (11th Cir. Mar.25, 2002); *Nelson v. Providian Nat'l Bank*, 234 B.R. 528, 534 (Bankr. M.D.Fla.1999); *Pereira v. First N. Am. Nat'l Bank*, 223 B.R. 28, 30–31 (N.D.Ga. 1998); *see also Cline v. First Nationwide Mort. Corp.*, 282 B.R. 686, 693–94 (W.D.Wash.2002); *Wells Fargo Bank, N.A. v. Singleton*, 284 B.R. 322, 325 (D.R.I.2002), with the understanding that, in such proceedings, "the court" includes both the bankruptcy court and the district court sitting in bankruptcy, *see* 28 U.S.C. § 151; *Sheridan v. Michels*, 282 B.R. 79, 86 (1st Cir. BAP 2002); *Williams*, 244 B.R. at 867–68. Accordingly, Avco continues, "the authority of the Massachusetts bankruptcy court or this district court to recognize a class of debtors situated similarly to [Plaintiff] is limited to debtors whose discharge injunctions issued in the District of Massachusetts." (Docket No. 61 (hereinafter "Avco's Brief") at 9 (citing cases).)

For his part, Plaintiff contends that there are "significant differences" between a section 524 statutory discharge injunction and other court orders. (Docket No. 64 (hereinafter "Plaintiff's Brief") at 5.) This distinction, Plaintiff maintains, is articulated by "more recent and better reasoned authority" purportedly enabling section 524 plaintiffs to pursue nationwide, contempt-based class actions under the remedy articulated in section 105. (See *id.* at 8.)

In the court's view, Avco has the better argument. As described below, the case law, the legislative history to the Bankruptcy Act and practical considerations all point to the conclusion that the court lacks nationwide jurisdiction with respect to the one remaining claim Plaintiff makes.

a. *case law*

Plaintiff's argument to the contrary, the First Circuit's opinion in *Bessette II*, in this court's view, does not support his claim to a nationwide class. To be sure, the First Circuit made certain observations about the characteristics of a statutory discharge. See *id.*, 230 F.3d at 445–45. However, as the court in *Beck* observed, "[t]o draw from [*Bessette II* ] the conclusion that ... a district court sitting in bankruptcy ... can use its contempt powers to enforce injunctions issued across the nation is ... unwarranted." *Beck*, 283 B.R. at 170. This court agrees. Indeed, the "overwhelming" majority of decisions, including *Bessette III* and its progeny, holds otherwise. See *id.* at 170, 173.

At least four points are worth noting. First, Judge Lagueux's opinion in *Bessette III* directly contradicts Plaintiff's position. As Judge Lagueux observed: "The estate . . . is the key factor in determining bankruptcy jurisdiction" and "[t]he location of the estate is determined by the filing of the petition." *Bessette III*, 279 B.R. at 448–49 (citations and internal quotation marks omitted). "For a court to have jurisdiction over a bankruptcy estate," Judge Lagueux continued, "the petition for bankruptcy must be filed in that district." *Id.* at 449. Accordingly, he concluded, "[i]If the petition for bankruptcy is not filed in [the forum state], the estate is not located [t]here, and the [forum] Court has no jurisdiction." *Id.* (citations omitted).

To be sure, Plaintiff believes that *Bessette III* ignores numerous bankruptcy contexts in which a nationwide or multi-state classes have been certified. *See, e.g., Madison Assocs. v. Baldante*, 183 B.R. 206, 209, 213 (Bankr.C.D.Cal.1995); *Shaw v. Whirlpool Fin. Corp.*, 158 B.R. 384, 387 (Bankr.W.D.Pa.1993); *Cardinal Indus., Inc. v. Buckeye Fed. Sav. & Loan Ass'n*, 102 B.R. 991, 993 (Bankr.S.D.Ohio 1989). *See also Smith v. N.Y. State Higher Educ. Servs. Corp.*, 95 B.R. 286, 291 (Bankr. N.D.N.Y.1988) ("A class action may be maintained in bankruptcy court by debtors who are representatives of a class of similarly situated persons once the threshold requirements of Fed.R.Civ.P.23(a) are met and the pertinent Code sections and rules complied with."). In this court's opinion, however, *Bessette III* does not have so wide a sweep. The debtors in the class actions Plaintiff cites were pursuing claims broader than the single section 105 contempt cause of action at issue here. Thus, in this court's estimation, *Bessette III*

should be read narrowly as barring a nationwide class for alleged violations of section 524 where the *only* cause of action is for contempt pursuant to section 105, not as precluding a nationwide class action in other bankruptcy contexts.[4]

Second, the court notes that Judge Lagueux's position has been adopted by other judges in the District of Rhode Island. For example, District Judge Mary M. Lisi recently found Judge Lagueux's reasoning in *Bessette III* "persuasive" and, accordingly, refused to permit nationwide discovery in another section 524 action virtually identical to the one at issue here. *See Singleton*, 284 B.R. at 325. Bankruptcy Judge Arthur N. Votolato, too, has followed Judge Lagueux's lead. *See Mulcahy v. Washington Mut.*, Nos. 99–14121, 02–1009, 2002 WL 31478177, at *1 (Bankr. D.R.I. Oct.15, 2002) ("[G]iven the state of the law on class certification in the District of Rhode Island, it is doubtful that a nationwide class action would be ultimately be certified in this case.") (citing *Bessette III* and *Singleton*).

Third, recent decisions from other jurisdictions support the notion that a nationwide class action in the instant matter would be inappropriate. For example, in *Williams*, which the First Circuit cited approvingly in *Bessette II*, the court held that no jurisdiction exists to enforce section 524 through section 105 unless the debtor received a discharge through the same court. *Id.* at 867–68. And in *Beck*, the court observed as follows: "[The defendant]'s position that I may not hold it in contempt for violating discharge injunctions issued by bankruptcy courts nationwide is . . . supported by the *overwhelm-*

---

4. For example, the court does not suggest that a nationwide class action is unavailable with respect to a direct cause of action under section 524. However, like the First Circuit, the

court has not been asked to enter into that "fray," *see Bessette II*, 230 F.3d at 444 (citing cases), given that Plaintiff has eliminated that claim here.

*ing number* of lower courts to consider the issue." *Id.,* 283 B.R. at 173–74 (emphasis added). *See also Nelson,* 234 B.R. at 534 (holding that "the bankruptcy court has no jurisdiction to entertain a private cause of action for damages by debtors who obtained their discharge in a court other than this one"); *Pereira,* 223 B.R. at 30–31 (noting that a contempt action for violation of section 524 may only be heard by the court that issued the discharge injunction). *Cf. In re Kewanee Boiler Corp.,* 270 B.R. 912, 920 (Bankr.N.D.Ill.2002) (reasoning that since violations of the discharge injunction may be treated as civil contempt, section 524(a)(2) "leaves responsibility for enforcing the injunction in the court that issued the discharge"); *Transamerica Fin. Servs. v. Danney,* No. 99–228–P–H, 1999 WL 33117201, at *2–3 (D.Me. Dec.23, 1999) (ruling that remedy for creditor's violation of discharge order is contempt proceeding in the court which issued the order).

Fourth, the contrary, and purportedly "better reasoned," authority Plaintiff cites is either distinguishable or no longer good law. For example, neither *Noletto v. Nationsbanc Mort.,* 244 B.R. 845 (Bankr. S.D.Ala.2000), nor *Bank United v. Manley,* 273 B.R. 229 (N.D.Ala.2001), concerned a contempt proceeding under section 524, via section 105, by a Chapter 7 debtor. Rather, both involved class claims in Chapter 13 bankruptcies, an entirely different type of proceeding, under section 362 and 11 U.S.C. § 506(b). Yet another decision Plaintiff cites, *In re Tate,* 253 B.R. 653 (Bankr.W.D.N.C.2000), was a Chapter 13 matter which did not involve a contempt claim under section 105. Similarly, section 105 contempt was not at issue in either *Aiello v. Providian Fin. Corp.,* 231 B.R.

693 (Bankr.N.D.Ill.1999), *aff'd,* 257 B.R. 245 (N.D.Ill.2000), *aff'd,* 239 F.3d 876 (7th Cir.2001), or *Fleet v. United States Consumer Council, Inc.,* 53 B.R. 833 (Bankr. E.D.Pa.1985). Finally, Bankruptcy Judge Votolato's November 13, 2001 decision in *Singleton,* upon which Plaintiff relies, was reversed by Judge Lisi, *see id.,* 284 B.R. at 325, and is at variance with Judge Lagueux's opinion in *Bessette III.*[5]

### b. *legislative history*

The legislative history to 524 also appears to "support[ ] the conclusion that only the court which issues a discharge order that gives rise to a discharge injunction has authority through its contempt powers to enforce the injunction." *Beck,* 283 B.R. at 174. As the First Circuit observed in *Bessette II,* a number of courts have held that section 524 does not itself create a private right of action. *See id.,* 230 F.3d at 444 (citing *Danney,* 1999 WL 33117201, at *3; *Cox v. Zale Delaware, Inc.,* No. 97 C 4464, 1998 WL 397841, at *2–4 (N.D.Ill. July 13, 1998); *Pereira,* 223 B.R. at 30; *Lenior v. GE Capital Corp.,* 231 B.R. 662, 673–74 (Bankr.N.D.Ill.1999)). The rationale for that conclusion usually proceeds as follows: in 1984 Congress amended section 362 to provide a private right of action; simultaneously, Congress amended section 524, but did not add an express right of action thereunder; ergo, Congress decided that section 524 does not itself create a private right of action. *See generally Beck,* 283 B.R. at 163.

While this court has not been asked to weigh in on the private cause of action debate, (see n.3, supra), the legislative history to section 524 appears to counsel against a nationwide class in situations such as the one at bar. As the Sixth

---

**5.** As described, Judge Votolato has since followed the lead of Judges Lisi and Lagueux.

*See Mulcahy,* 2002 WL 31478177, at *1.

Circuit observed, "Congress knew [when the 1984 amendments were enacted] that courts were enforcing § 524 through contempt proceedings." *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir.2000). "Certainly Congress was also aware at that time of the general principle that only the court which issues an injunction has the authority to enforce it." *Beck*, 283 B.R. at 174. "Accordingly, Congress' decision not to add an express cause of action to § 524 to remedy violations of that section can be viewed as a tacit approval of the enforcement scheme which leaves authority for remedying violations of § 524 in the hands of the court which issued the injunction." *Id.* Stated another way:

> Had Congress intended to alter this scheme to enable any court nationwide to enforce a discharge order of another court, it could have done so by including a private cause of action in § 524. To sanction the use of the contempt remedy in the manner Plaintiff advocates would allow Plaintiff to accomplish indirectly what Congress has not authorized directly.

*Id.* (footnote and citations omitted). *See also id.* at 171–72 (indicating that any "deficiency" ought to be "properly addressed by Congress and not judicial legislation") (citing *In re Federal–Mogul Global, Inc.*, 300 F.3d 368, 390 (3d Cir.2002)).

### c. *practical considerations*

Finally, practical considerations caution against the establishment of a nationwide class in the instant matter. As Avco points out, dramatic legal differences exist from district to district as to what is an acceptable binding reaffirmation, to what extent reliance on the reaffirmation form is an element, and to what extent post-discharge payments made after a failed reaffirmation attempt are able to be characterized as voluntary. (See Avco's Brief, Exhibit A (compendium of local rules from various districts establishing different procedures for reaffirmation).) In addition, the various local rules governing reaffirmation agreements oftentimes require the parties to satisfy special filing and disclosure requirements particular only to that district. (See *id.*) Accordingly, any court attempting to certify a nationwide class in a case such as this would likely step into a logistical and legal quagmire.

### d. *summary*

In summary, the case law and legislative history surrounding sections 105 and 524, particularly when combined with the practical considerations articulated above, lead this court to believe that the district court lacks jurisdiction over the claims of putative class members whose bankruptcies were discharged outside the District of Massachusetts. On this basis, therefore, the court will recommend that Avco's motion to strike Plaintiff's allegations as to a nationwide class be allowed.

### 2. *Can a Massachusetts class be maintained?*

█ Avco also argues that, even as to debtors in Massachusetts, Plaintiff's class action claims do not satisfy the requirements of commonality, typicality and predominance. In the court's view, this argument, made prior to the establishment of a discovery schedule, is premature.

█ "The present question before the Court ... is not whether the class should be certified, but whether the class allegations in the complaint should be stricken. At this stage, the burden is not on the party seeking class certification[;] rather, as the non-moving party, all reasonable inferences must be construed in [his] favor." *Bessette III*, 279 B.R. at 451 (citing *Correa–Martinez*, 903 F.2d at 52). Here, as in *Bessette*, Plaintiff has alleged suffi-

cient facts in the complaint to survive Avco's motion to strike insofar as the motion targets putative class members in Massachusetts. (See Complaint ¶¶ 83–94.) To again quote Judge Lagueux, "[a]t this point, there is no basis to conclude that the class consists of only a handful of possible plaintiffs whose factual scenarios could never be suitable for class action. Simply because [Massachusetts] is a small state does not, as a matter of law, warrant dismissal." *Bessette III,* 279 B.R. at 452.

## V. CONCLUSION

For the reasons stated, the court suggests that jurisdiction does not exist over the claims of putative class members whose bankruptcies were discharged outside the District of Massachusetts and, on that basis, recommends that Avco's motion to strike Plaintiff's class allegations be ALLOWED and the pleadings amended accordingly.

With respect to Massachusetts debtors, however, the court recommends that Avco's motion to strike be DENIED.[6]

Dated: March 25, 2003.

---

[6]. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.