# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2010

Lyle W. Cayce
Clerk

No. 09-20415

In the Matter of: JUDY C. WILBORN,

Debtor

----------------------------------------------------------------

JUDY C. WILBORN; KARLTON E. FLOURNOY; MONICA E. FLOURNOY; JUDITH A. MARTIN,

Appellees

v.

WELLS FARGO BANK, N.A.,

Appellant

Appeal from the United States Bankruptcy Court
for the Southern District of Texas

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

REAVLEY, Circuit Judge:

This is an interlocutory appeal from the bankruptcy court's certification of a class action in an adversary proceeding. The Plaintiffs-Appellees sought to represent a class of debtors who had filed Chapter 13 petitions in the United States Bankruptcy Court for the Southern District of Texas and who had home mortgages held or serviced by Defendant-Appellant Wells Fargo Bank, N.A. The

questions at issue are whether a bankruptcy judge may certify a class action comprised of debtor-plaintiffs, and if so, whether the class certification in this case was proper. We conclude that a bankruptcy judge may certify a class of debtors under appropriate circumstances but that the proposed class in this case does not satisfy the requirements of Federal Rule of Civil Procedure 23 and Federal Bankruptcy Rule of Procedure 7023. We therefore VACATE the court's class certification order.

## I.

The individual named plaintiffs in this case are Judy Wilborn, Karlton and Monica Flournoy, and Judy Martin. The Plaintiffs filed separate Chapter 13 bankruptcy petitions in the Southern District of Texas, and each has a home mortgage held or serviced by Wells Fargo. Plaintiffs alleged in an adversary proceeding that Wells Fargo charged, or charged and collected, unreasonable and unapproved post-petition professional fees and costs during the pendency of their bankruptcies. They alleged that Wells Fargo's pattern and practice of charging such fees avoided court oversight of the charges and is contrary to the United States Bankruptcy Code, specifically 11 U.S.C. § 506(b), and Federal Bankruptcy Rule of Procedure 2016.

The fees and costs at issue are permitted by the Plaintiffs' individual loan documents and include such things as bankruptcy attorneys' fees, recording fees, notification fees, title search fees, document fees, and property inspection fees. Plaintiffs' theory is that Wells Fargo's failure to disclose these fees to the bankruptcy court interferes with their ability to complete their Chapter 13 reorganization plans and emerge from bankruptcy having cured all arrearages. Plaintiffs complain because, even though Wells Fargo receives distributions from the Chapter 13 Trustee in accord with the plan, the undisclosed fees accumulate during the pendency of the bankruptcy. At the conclusion of the plan, debtors

find they are still in default due to the fees and may face foreclosure when they are unable to meet payment demands.

According to the complaint and the parties' exhibits, Wells Fargo charged the named plaintiffs fees incurred both before and after confirmation. The fee amounts ranged from over $1200 to more than $4000. In some instances, a portion of the fees were previously approved by the court. For example, approximately $600 in fees were approved in the Flournoys' case out of more than $3000 charged by Wells Fargo, and $450 in fees were approved in one of Martin's two bankruptcy cases. In Wilborn's case, no fees were approved by the bankruptcy court.

Plaintiffs sought as relief a declaratory judgment that undisclosed fees and costs are per se unreasonable. They also sought disgorgement of any fees and costs actually collected; an injunction barring Wells Fargo from charging and/or assessing the mortgage accounts of debtors for fees and costs without first seeking approval from the bankruptcy court; and sanctions against Wells Fargo pursuant to 11 U.S.C. § 105. Plaintiffs further moved for class certification.

The bankruptcy court granted the Plaintiffs' motion and certified a class defined as follows:

> All individuals who filed for bankruptcy under Chapter 13 in the Southern District of Texas between November 16, 2002 through November 16, 2007 who owed Wells Fargo, as servicer or holder, on a mortgage debt secured by real property, and upon whom Wells Fargo either charged, or both charged and collected, professional fees and costs during the pendency of each of their respective bankruptcy cases which were never disclosed to this Court, the debtors, or other parties-in-interest nor approved by this Court by written order entered on the docket in their respective bankruptcy cases.

The court defined "this Court" in the class definition to be the United States Bankruptcy Court for the Southern District of Texas regardless of the particular

3

judge presiding over the case. The court determined that the above class had approximately 1,236 members.

The bankruptcy court certified its class certification order for direct appeal to this court. Wells Fargo also filed a timely petition for permission to appeal, which a panel of this court granted.

## II.

We have direct appellate jurisdiction over this interlocutory matter from the bankruptcy court because of that court's certification that an appeal may be taken, and our agreement to hear the appeal. *See* 28 U.S.C. § 158(d)(2); *In re OCA, Inc.*[1] We treat certified questions under § 158(d)(2) like questions certified under 28 U.S.C. § 1292(b) from the district court. *OCA*, 552 F.3d at 418. The issue certified to us for appeal is the propriety of the bankruptcy court's class certification order.

Wells Fargo challenges the bankruptcy court's certification order on both jurisdictional and procedural grounds. We review the bankruptcy court's determination that it had jurisdiction de novo. *In re Seven Seas Petroleum, Inc.*[2] We review a decision to certify a class action for abuse of discretion, but the legal standards employed by the court below are reviewed de novo. *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*[3]

## III.

A bankruptcy court's jurisdiction is limited. It derives from the statutory scheme vesting original but not exclusive jurisdiction in the district courts over "all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Bankruptcy jurisdiction

---

[1] 552 F.3d 413, 418 (5th Cir. 2008).

[2] 522 F.3d 575, 583 (5th Cir. 2008).

[3] 597 F.3d 330, 334 (5th Cir. 2010).

thus exists in three types of proceedings: those "arising under" Title 11, those "arising in" a case under Title 11, and those that are "related to" bankruptcy cases. *See In re Wood*.[4]  Under the statutory scheme, the district courts are permitted to refer matters to the bankruptcy courts within their districts. *See* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

Once federal jurisdiction is found in the district court under § 1334(b), which is construed broadly, the extent to which a bankruptcy court may adjudicate a referred matter depends on whether the proceeding is considered to be "core" or "non-core."  *In re Majestic Energy Corp*.[5]  "Core" proceedings are those that "arise under" Title 11 insofar as they involve a cause of action created by a statutory provision therein, and those that "arise in" cases under Title 11, which by their nature can only arise in bankruptcy cases; the district court may refer such core matters to the bankruptcy court for full adjudication. *See Wood*, 825 F.2d at 97; 28 U.S.C. § 157(b).  For matters that "relate to" bankruptcy cases, however, the bankruptcy court may only issue proposed findings and conclusions to the district court. *See In re Southmark Corp*.[6]

The Plaintiffs' complaint is based on the claim that for each named plaintiff and each unnamed class member Wells Fargo impermissibly charged post-petition fees and costs without obtaining approval from the bankruptcy court, as purportedly required by Title 11 and the Federal Rules of Bankruptcy Procedure.  Under 11 U.S.C. § 506(b), an over-secured creditor is permitted to

---

[4] 825 F.2d 90, 93 (5th Cir. 1987).

[5] 835 F.2d 87, 90 (5th Cir. 1988).

[6] 163 F.3d 925, 930 & n.8 (5th Cir. 1999).

recover certain reasonable, pre-confirmation charges that are incurred in connection with the bankruptcy and that are allowed under its contract with the debtor.[7] Rule 2016 provides that a creditor seeking compensation from a debtor's estate must first file with the bankruptcy court an application setting forth the services rendered and the amount requested.[8] The Plaintiffs read these provisions together to require Wells Fargo to seek prior approval of all contractually-allowed, post-petition fees and charges, whether incurred before or after confirmation, and to disgorge all fees not previously approved.

Wells Fargo conceded at oral argument that the claims of the named Plaintiffs arise during each plaintiff's individual bankruptcy case. There is therefore federal bankruptcy jurisdiction in this matter under § 1334(b). Wells Fargo contends, however, that because the individual bankruptcy cases of the named plaintiffs and the putative class members are before different bankruptcy judges within the Southern District of Texas, the bankruptcy court here lacked jurisdiction to certify the class. It argues that one bankruptcy judge may not

---

[7] The statute provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

[8] Rule 2016(a) states, in relevant part:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. . . . The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

FED. R. BANKR. P. 2016(a).

exercise jurisdiction over claims that arise in other cases administered by other judges. Under this view, a bankruptcy court would never be able to certify a class action of debtors unless the individual bankruptcy cases of all debtors happened to be before a single bankruptcy judge. We are unable to agree.

Section 157(a) permits district courts to refer to bankruptcy courts "any or all cases" and "any or all proceedings." *See* § 157(a). Consistent with that broad authority, the district court for the Southern District of Texas has issued a general order of reference, which automatically refers all bankruptcy cases and proceedings to the bankruptcy judges of the district. *See In re Referrals to Bankruptcy Judges*, General Order 2005-6 (S.D. Tex. Mar. 10, 2005) (providing that with limited exceptions "[b]ankruptcy cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 of the United States Code are automatically referred to the bankruptcy judges of this district"). This general order of reference provides that "the bankruptcy judges may exercise the full authority allowed them by law." *Id.* The allocation of cases among the bankruptcy judges after referral is an administrative matter, not a jurisdictional issue. *Cf.* 28 U.S.C. § 137 ("The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.").

We have read the jurisdictional statutes of § 1334(b) and § 157(a) as restricting the *placement* of jurisdiction in the bankruptcy courts, rather than as restricting the *scope* of bankruptcy court jurisdiction. *Majestic Energy Corp.*, 835 F.2d at 90. The placement of jurisdiction in the bankruptcy court here was proper, and based upon the general order of reference, the scope of the bankruptcy court's jurisdiction was unrestricted.

No. 09-20415

We recognize that there has been disagreement among courts as to whether a bankruptcy judge may certify a class action of debtors.[9] However, class action proceedings are expressly allowed in the Federal Bankruptcy Rules, which provide that the requirements for class actions under Federal Rule of Civil Procedure 23 apply in adversary proceedings. *See* FED. R. BANKR. P. 7023. Although a federal rule may not extend a court's jurisdiction, *see Waffenschmidt v. MacKay*,[10] its intended purpose should be upheld so long as it otherwise offends no substantive rights. *See In re Adams*.[11] We see no such result here. On the contrary, if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules. This would ascribe to Congress the intent to categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a clear indication of such intent. *See Bank United*, 273 B.R. at 250; *Tate*, 253 B.R. at 664. Wells Fargo's contrary position essentially would restrict a bankruptcy court's class certification authority to a proposed class of creditors rather than debtors. *See, e.g., In re*

---

[9] Some courts have held that bankruptcy courts may not certify a class action of debtors, largely reasoning that individual bankruptcy cases must be adjudicated by a single bankruptcy judge to whom the case has been referred. *See, e.g., In re Cline*, 282 B.R. 686, 690 (W.D. Wash. 2002); *In re Lenior*, 231 B.R. 662, 668 (Bankr. N.D. Ill. 1999); *In re Fisher*, 151 B.R. 895, 898 (Bankr. N.D. Ill. 1993). Other courts have held to the contrary. *See, e.g.*, *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 354–55 (S.D. Tex. 2009) (collecting cases); *Bank United v. Manley*, 273 B.R. 229, 250 (N.D. Ala. 2001); *In re Tate*, 253 B.R. 653, 662 (Bankr. W.D.N.C. 2000); *In re Williams*, 244 B.R. 858, 865–66 (S.D. Ga. 2000). There is also disagreement about whether the bankruptcy court may exercise jurisdiction over a *nationwide* class of debtors or is limited to exercising jurisdiction over debtors whose petitions are filed within the same judicial district. *Compare, e.g., In re Noletto*, 244 B.R. 845, 849 (Bankr. S.D. Ala. 2000) (permitting nationwide class) *with Barrett v. AVCO Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 8 (D. Mass. 2003) (holding court lacks jurisdiction over putative class members whose bankruptcies were discharged outside of judicial district). The class at issue in this case was limited to debtors within one judicial district, the Southern District of Texas.

[10] 763 F.2d 711, 720 (5th Cir. 1985).

[11] 734 F.2d 1094, 1101–02 (5th Cir. 1984) (test for enforceablility of bankruptcy rules of procedure precludes rules that abridge, enlarge, or modify substantive rights).

*Talbert*, 347 B.R. 804, 807 (Bankr. E.D. La. 2005) (certifying a class action comprised of creditor-plaintiffs in an adversary proceeding against a single debtor). Neither the Code nor the rules provide such an express limitation, and we decline to read it into them.

Class actions promote efficiency and economy in litigation and permit multiple parties to litigate claims that otherwise might be uneconomical to pursue individually. *See Am. Pipe & Constr. Co. v. Utah*.[12] These principles are no less compelling in the bankruptcy context. We hold therefore that the bankruptcy court has authority to certify a class action of debtors whose petitions are filed within its judicial district provided that the prerequisites for a class under Rule 23 are satisfied.

**IV.**

Wells Fargo argues that the bankruptcy court abused its discretion by certifying the Plaintiffs' cause of action as a class under Rule 23. "All classes must satisfy the four baseline requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Anderson v. U.S. Dep't of Housing & Urban Dev*.[13] The proposed class must also satisfy the requirements of Rule 23(b)(1), (2), or (3). *Maldonado v. Ochsner Clinic Found*.[14] The bankruptcy court here held that, in addition to meeting the requirements of Rule 23(a), the class could be certified under Rule 23(b)(2) or (b)(3). Because we agree that the class certification was improper under Rule 23(b), we need not address Wells Fargo's challenge under Rule 23(a).

Rule 23(b)(3) requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only

---

[12] 414 U.S. 538, 553, 94 S. Ct. 756, 766 (1974); *see also Bank United*, 273 B.R. at 250.

[13] 554 F.3d 525, 528 (5th Cir. 2008); *see* FED. R. CIV. P. 23.

[14] 493 F.3d 521, 523 (5th Cir. 2007).

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The question of predominance is more demanding than the Rule 23(a) requirement of commonality. *O'Sullivan v. Countrywide Home Loans, Inc.*[15] It requires the court to assess how the matter will be tried on the merits, which "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class."[16] "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor.*[17] "Additionally, the superiority analysis 'requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.'"[18]

Plaintiffs' claims here fail under the predominance and superiority inquiries because individual issues for each class member, particularly with respect to damages, override class concerns when we consider how the case must be tried. As noted above, the claim that Wells Fargo charged, or charged and collected, undisclosed fees is based on § 506(b) of the Bankruptcy Code and Rule 2016. There is disagreement among the bankruptcy courts as to the scope of the requirement under § 506(b) and Rule 2016 for lenders to obtain court approval before assessing contractually-allowed fees.[19] For purposes of reviewing the

---

[15] 319 F.3d 732, 738 (5th Cir. 2003).

[16] *Id.*

[17] 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997).

[18] *Maldonado*, 493 F.3d at 525 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998)).

[19] *Compare, e.g., In re Payne*, 387 B.R. 614, 631 (Bankr. D. Kan. 2008) ("Post-petition fees and charges are subject to review under the debtor's plan, state law, FED. R. BANKR. P. 2016(a), and § 105."); *In re Jones*, 366 B.R. 584, 596 (Bankr. E.D. La. 2007) (§ 506(b) and Rule 2016 require disclosure and approval of post-petition, pre-confirmation fees and charges, but

certification order, we will assume, without deciding, that prior disclosure and approval are necessary. *See Langbecker v. Elec. Data Sys. Corp.*[20] However, when we "evaluate with rigor," as we must, the claims and the Rule 23 requirements, we conclude that class adjudication of the case is not warranted.[21]

The cases of the individual named plaintiffs show how the circumstances of the fees charged by or paid to Wells Fargo may vary from debtor to debtor and illustrate the many underlying circumstances of the charges that would need to be considered. In the case of Wilborn, the parties entered into an agreed order to modify the stay after Wilborn defaulted on her loan post-petition. The agreed order required Wilborn to resume payments to Wells Fargo, but when Wilborn could not comply with the order, the automatic stay terminated under the terms of the order. In order to avoid the resulting foreclosure, Wilborn agreed to a loan modification, pursuant to which she agreed to pay certain fees and costs in addition to the delinquency. The Flournoys also defaulted on their loan post-petition, but the bankruptcy court entered an agreed order modifying the stay to allow the Flournoys to cure post-petition delinquencies and to pay fees and costs, which were then approved by the court. Finally, the bankruptcy court allowed Martin to sell her home outside of bankruptcy and all fees and costs accrued to the loan were paid at the closing.

The bankruptcy court certifying this class action recognized that differing events had occurred within each individual debtor's bankruptcy case, but the

---

post-confirmation fees are contingent upon state law and the terms of the debtor's contract); and *Tate*, 253 B.R. at 662 ("§ 506(b) of the Code and its procedural counterpart, Bankruptcy Rule 2016, create rights and duties that affect debtors and creditors alike"); *with In re Padilla*, 389 B.R. 409, 443 (Bankr. E.D. Pa. 2008), and *In re Aldrich*, 2008 WL 4185989, at *3 (Bankr. N.D. Iowa Sept. 4, 2008) (both finding no requirement in the Bankruptcy Code or rules of procedure for prior notice of post-petition contractual charges).

[20] 476 F.3d 299, 306 (5th Cir. 2007) (noting that "federal courts cannot assess the merits of the case at the certification stage").

[21] *See id.*

No. 09-20415

court held that because all plaintiffs had fees and costs charged to their accounts by Wells Fargo during the pendency of the bankruptcies, common issues of law or fact predominate over individual issues. But this ignores how and why certain fees were charged or paid. The circumstances surrounding the charging of fees require an individual assessment of the claims. It appears that some debtors, like Wilborn, may have agreed to certain fees as an inducement to Wells Fargo for a loan modification and provided additional consideration for the modification. In other cases at least partial fees were approved for some debtors. Such varying circumstances will require the court to examine each individual bankruptcy case. The bankruptcy court cannot require Wells Fargo to simply disgorge all fees that were not previously approved because it is evident that there has been a wide "array of charges tailored" to each individual debtor. *See Maldonado*, 493 F.3d at 525–26.

In some cases it may be appropriate to require Wells Fargo to disgorge fees, but we think that is for the bankruptcy court to decide. The differing circumstances of the debtors render the reasonableness of the individual charges a fact-specific inquiry rather than a class-oriented decision. *See Maldonado*, 493 F.3d at 526. In some instances, it may also be necessary to determine whether fees were actually imposed on the debtors or merely recorded on internal records. *See In re Padilla*, 379 B.R. 643, 662 (Bankr. S.D. Tex. 2007) ("The Bankruptcy Code does not prohibit [creditors] from maintaining internal records of costs incurred."). Furthermore, where fees have been imposed Wells Fargo may have viable defenses to some plaintiffs' claims, such as waiver or estoppel. *See In re Monumental Life Ins. Co.*[22] Finally, the rulings of different bankruptcy judges during their cases may affect the computation of allowable charges by Wells Fargo. In short, the myriad issues that may arise in each case as to

---

[22] 365 F.3d 408, 420 (5th Cir. 2004) ("The predominance of individual issues necessary to decide an affirmative defense may preclude class certification.").

12

whether and how fees and costs were imposed preclude a class-wide disposition of the case under Rule 23(b)(3).

For similar reasons, class certification is improper under Rule 23(b)(2). The Rule 23(b)(2) inquiry focuses on whether the putative class defendant "has acted or refused to act on grounds that apply generally to the class" so that injunctive or declaratory relief is appropriate for the class as a whole. *See* FED. R. CIV. P. 23(b)(2). Again, the circumstances and court orders differ between the judges and cases. And the injunctive or declaratory relief sought by the plaintiffs must predominate over claims for monetary relief. *Maldonado*, 493 F.3d at 524. This requires that requests for monetary relief be incidental to the class-wide injunctive or declaratory relief so that plaintiffs will be automatically entitled to the monetary remuneration once liability is established for the class. *See Allison*, 151 F.3d at 416. The monetary relief must be "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Id.* at 415. The Plaintiffs' request for disgorgement of fees is not merely incidental to the sought-after injunction and declaration. The amount that each plaintiff was charged, perhaps the amount that is "reasonable," and any amount to be disgorged will depend on the specific circumstances of each class member and whether and how fees were imposed. *See Maldonado*, 493 F.3d at 524. We therefore disagree with the bankruptcy court's determination that disgorgement amounts may be determined with mathematical certainty absent individual hearings. The class certification under Rule 23(b)(2) was therefore improper.

For the foregoing reasons, the putative class falls short of the Rule 23(b) requirements. The bankruptcy court's certification order is therefore VACATED.